**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| POWX INC.,<br><br>Plaintiff,<br><br>v.<br><br>PERFORMANCE SOLUTIONS, LLC,<br><br>Defendant. | Case No. 1:24-CV-01389-MMG<br><br>Hon. Margaret M. Garnett<br><br>Hon. Katharine H. Parker, U.S.M.J. |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT PERFORMANCE SOLUTIONS, LLC'S**
**MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

Dated: April 10, 2024

Ashe Puri (*admitted in S.D.N.Y.*)
MAYNARD NEXSEN LLP
10100 Santa Monica Boulevard, Suite 550
Los Angeles, CA 90067
Telephone: (310) 596-4344
Facsimile: (205) 714-6415
apuri@maynardnexsen.com

John M. Hintz
MAYNARD NEXSEN PC
The Fred F. French Building
551 Fifth Avenue, Suite 1600
New York, NY 10176
Telephone: (646) 609-9280
Facsimile: (205) 714-6396
jhintz@maynardnexsen.com

*Counsel for Defendant*
*Performance Solutions, LLC*

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........ iii

CERTIFICATION OF MEET-AND-CONFER ........ v

I. INTRODUCTION ........ 1

II. BACKGROUND OF THE DISPUTE ........ 6

III. LEGAL STANDARDS ........ 8

IV. ARGUMENT ........ 9

A. Performance Solutions Has a Likelihood of Success on the Merits Because the Accused Product Infringes Performance Solutions' Patents ........ 9

1. Claim 1 Preamble: "A two piece therapeutic, fitness, and sports enhancement device" ........ 10

2. Element [1a]: "a first piece including an entirely cylindrically shaped core made of closed cell foam, rubber or plastic and having a diameter of about 3 inches to about 15 inches" ........ 10

a. The Accused Product's core is entirely cylindrically shaped. ........ 10

b. The Accused Product's core is made from plastic. ........ 12

c. The diameter of the Accused Product's core is 4.3 inches. ........ 12

3. Element [1b]: "a second piece including an overlay completely surrounding the core, the overlay made of closed cell foam, rubber, or plastic and including a plurality of solid projections having a predetermined shape configured to extend into soft tissue of a user to enhance mobilization of soft tissue and optimize body core strength and balance training." ........ 13

a. The overlay of the Accused Product completely surrounds the core. ........ 13

b. The overlay of the Accused Product is made from a closed cell foam. ........ 14

c. The overlay of the Accused Product includes a plurality of solid projections having a predetermined shape configured to extend into soft tissue of a user to enhance mobilization of soft tissue and optimize body core strength and balance training. .................................. 14

B. PowX Has Failed to Raise Any Substantial Question Concerning the Validity and Enforceability of the Asserted Patents .................................. 16

C. Performance Solutions Will Suffer Irreparable Harm Not Compensable by Monetary Damages Absent a Preliminary Injunction.................................. 17

1. PowX and Performance Solutions' Licensees Are in Direct Competition .................................. 18

2. Performance Solutions Will Suffer Price Erosion .................................. 19

3. PowX Has Taken Substantial Market Share Away from Performance Solutions and its Licensees .................................. 20

4. Performance Solutions Will Lose Business Opportunities and Suffer Irreparable Harm to Its Licensing Business .................................. 21

D. The Balance of Equities Favors Performance Solutions.................................. 24

E. The Public Interest Favors Granting Performance Solutions' Motion .................................. 24

V. CONCLUSION.................................. 25

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*Abbott Labs. v. Sandoz, Inc.*,
544 F.3d 1341 (Fed. Cir. 2008)....................17

*Apple Inc. v. Samsung Elecs. Co.*,
801 F.3d 1352 (Fed. Cir. 2015)....................24

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
726 F.3d 1296 (Fed. Cir. 2013)....................17

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012)....................17

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)....................3, 4

*Genentech, Inc. v. Novo Nordisk, A/S*,
108 F.3d 1361 (Fed. Cir. 1997)....................16

*Metalcraft of Mayville, Inc. v. the Toro Co.*,
848 F.3d 1358 (Fed. Cir. 2017)....................25

*Mullins v. City of New York*,
626 F.3d 47 (2d Cir. 2010)....................8, 9

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*,
237 F.3d 1359 (Fed. Cir. 2001)....................17

*Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*,
138 F. Supp. 3d 303 (S.D.N.Y. 2014)....................4

*Revision Military, Inc. v. Balboar Mfg. Co.*,
700 F.3d 524, 525 (Fed. Cir. 2012)....................8, 9

*Sanofi-Synthelabo v. Apotex, Inc.*,
470 F.3d 1368 (Fed. Cir. 2006)....................18

*Titan Tire Corp. v. Case New Holland, Inc.*,
566 F.3d 1372 (Fed. Cir. 2009)....................16

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981)....................9

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7, 20 (2008) ....................................................................................................8

*Statutes*

35 U.S.C. § 271..............................................................................................................1

35 U.S.C. § 282(a) .........................................................................................................4

35 U.S.C. § 283..............................................................................................................8

## CERTIFICATION OF MEET-AND-CONFER

Pursuant to Paragraph 11 of Section II.B. of the Court's "Individual Rules and Practices," the parties' counsel met and conferred on March 13, 2024. Ashe Puri participated in the meet and confer on behalf of Defendant Performance Solutions, LLC. Tuvia Rotberg participated in the meet and confer on behalf of Plaintiff PowX Inc. The parties were unable to resolve the disputes raised by Defendant's motion and as explained in the accompanying memorandum of law.

Defendant Performance Solutions, LLC ("Performance Solutions") files this memorandum in support of its motion for a preliminary injunction against Plaintiff PowX Inc. ("PowX") to enjoin PowX from continuing to infringe Performance Solutions' patents in violation of 35 U.S.C. § 271. Performance Solutions has not yet been served with the Complaint (Dkt. No. 1), the Amended Complaint (Dkt. No. 3), the Complaint (Dkt. No. 9) and Summons in this action, but Performance Solutions is making an appearance in this action now to resolve this time-sensitive dispute regarding infringement of Performance Solutions' U.S. Patent Nos. 9,345,921 ("the '921 Patent"); 9,539,167 ("the '167 Patent"); 9,656,112 ("the '112 Patent"); 10,278,890 ("the '890 Patent"); and 10,695,260 ("the '260 Patent") (collectively, the "Asserted Patents") by PowX.[1]

## I. INTRODUCTION

Performance Solutions has curated a large portfolio of patents that is directed to a novel idea of using projections on a portable foam roller to enable people to reach into soft tissue (fascia, muscle, ligament, and tendon) to improve recovery and increase flexibility and mobility. Declaration of Kipp Dye (herein, "Dye Decl.") ¶ 8. This technology is used widely today in fitness and rehabilitation centers and for in-home use. *Id.*

Performance Solutions spends considerable effort and money to enforce and defend its patents against infringers in the marketplace, including on Amazon. *Id.* ¶ 13. This allows Performance Solutions to maintain strong business relationships with its licensees and to assist its licensees in maintaining their prominent positions in the foam roller market. *Id.*

Amazon has implemented a program for reporting and removing infringing products from Amazon's website. *Id.* ¶ 14. Today, this program is called "Amazon Patent Evaluation Express"

---

[1] Copies of the Asserted Patents are included as part of the Declaration of Ashe Puri filed herewith (herein, "Puri Decl.") as Exhibit A ('921 Patent); Exhibit B ('167 Patent); Exhibit C ('112 Patent); Exhibit D ('890 Patent); and Exhibit E ('260 Patent).

or "APEX," which is an online dashboard process that Amazon developed around 2022 to allow patent owners to report infringing listings (known as "ASINs") that are on Amazon's website. *Id.* Under the APEX program, a patent owner can assert one patent in a complaint against a seller. *Id.* From the time a patent owner submits a report, Amazon has the discretion to provide the reported seller twenty-one days to either participate in Amazon's patent neutral evaluation process (which occurs before a third party neutral) or resolve the claim with the patent owner. *Id.* Prior to 2022, Amazon required patent owners to communicate directly with Amazon's IP legal team to remove infringing products. *Id.* Since November 2018, Performance Solutions has worked diligently with Amazon to remove approximately 55,000 listings of infringing products to the benefit of Performance Solutions and its licensees. *Id.* ¶ 15.

PowX sells an unlicensed product on Amazon called "Textured Foam Rollers for Muscle Massage" (herein, the "Accused Product"). *Id.* ¶ 20. On January 29, 2024, Performance Solutions filed an APEX application to remove the Accused Product. *Id.* ¶ 23. Among the five Asserted Patents infringed by PowX, Performance Solutions listed the '112 Patent in the APEX application since Performance Solutions could only list one patent in any given application. *Id.* However, Performance Solutions had also notified PowX of the other four Asserted Patents – '921, '167, '890 and '260 Patents – prior to PowX filing this lawsuit. *Id.* ¶ 25.

After the twenty one day period had elapsed under the APEX program for PowX to either submit to Amazon's patent neutral evaluation or resolve its claim with Performance Solutions, Amazon informed Performance Solutions that PowX had instead filed a declaratory judgment action against Performance Solutions and that as a result of this filing, Amazon "will be pausing Evaluation … and deferring to the court's decision in this matter." *Id.* ¶ 27. Amazon further stated:

> Due to the lawsuit filed by PowX, and as stated in the Amazon Patent Evaluation Express Procedure, "if there is litigation pending on a patent subject to a proposed or pending Evaluation, Amazon may decide not to initiate or suspend an Evaluation until the completion of that litigation." Where a seller chooses to avail itself of the due process protections of court to litigate a claim of patent infringement, we will usually defer to that choice, and we have done so here.

*Id.* ¶ 28. Amazon's policy under the APEX program has empowered PowX to file a declaratory judgment Complaint in this Court (*see* Dkt. Nos. 1, 3 and 9) to prevent Amazon from removing PowX's infringing Accused Product and to allow PowX to continue selling the infringing Accused Product on Amazon's website.

In its Complaint, PowX has asserted claims of non-infringement, invalidity, and unenforceability with respect to the '112 Patent only. *See* Dkt. No. 1, ¶¶ 31-44; Dkt. No. 3, ¶¶ 31-44; Dkt. No. 9, ¶¶ 31-44. Although Performance Solutions had notified PowX about the '921, '167, '890, and '260 Patents prior to PowX filing this lawsuit (Dye Decl. ¶ 25), PowX did not raise any defenses to infringement, validity, or enforceability of these four patents in the Complaints or the Amended Complaint. (*See* Dkt. Nos. 1, 3, and 9).

As to the '112 Patent, PowX's Complaint also presents no credible defenses to infringement as explained herein. *See* Section IV.A, below. PowX's invalidity claim merely recites two statutory provisions for patentability of an invention, and thus presents no credible claim of invalidity. *See* Dkt. No. 9, ¶ 39 ("The '112 Patent is invalid for failure to comply with at least 35 U.S.C. §§ 102 and/or 103."). PowX's claim of patent unenforceability (*see* Dkt. No. 9, ¶¶ 41-44) is equally meritless (and concerning from the standpoint of Rule 11) because it fails to identify any facts showing inequitable conduct and does not come close to meeting the heightened pleading standard required under Rule 9(b). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) ("'[I]nequitable conduct, while a broader concept than fraud, must be

pled with particularity' under Rule 9(b)."); *see also Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*, 138 F. Supp. 3d 303, 317 (S.D.N.Y. 2014) ("'[T]o plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.'") (quoting *Exergen Corp.*, 575 F.3d at 1328).

PowX's <u>sole</u> non-infringement defense to the '112 Patent rests on a false and unsubstantiated statement in the Complaint that the Accused Product does not have an "entirely cylindrically shaped core." *See* Dkt. No. 9, ¶ 30. Three different experts, Dr. Ryan Abbott, M.D., Dr. Chris Scott, Ph.D, and Dr. Lawrence Copley, Ph.D, each of whom have submitted sworn declarations in support of this Motion, have inspected the Accused Product and confirmed that it contains an entirely cylindrically shaped core made of plastic, as is evident in the photos of the Accused Product below:







*See* Declaration of Lawrence Copley filed herewith (herein, "Copley Decl"), ¶ 12. In addition to the three expert declarations, Performance Solutions is submitting herewith detailed infringement claim charts demonstrating how the Accused Product directly infringes at least Claim 1 of each of the five Asserted Patents. *See* Puri Decl. Exhibits L-P.

Because all patents are presumed valid and PowX has the burden to prove invalidity by clear and convincing evidence (*see* 35 U.S.C. § 282(a)), Performance Solutions is likely to succeed

on the merits as to the validity of its patents. In addition to that presumption of validity, there is a more compelling reason why Performance Solutions is likely to succeed on the merits as to the validity of its patents. Recently, the ’167, ’112, ’890, and ’260 Patents emerged from *ex parte* reexaminations before the United States Patent and Trademark Office (“USPTO”). The reexaminations proceeded before the USPTO’s Patent Trial and Appeal Board (“PTAB”), and the PTAB found all 70 original claims and 37 newly added claims across all four patents patentable over dozens of prior art references. *See* Puri Decl., Exhibits H-K. The USPTO issued Certificates of Reexaminations for the ’167, ’890 and ’260 Patents (*see* Puri Decl., Exhibits B, D, and E) and a Notice of Intent to Issue a Reexamination Certificate for the ’112 Patent (*see id.*, Exhibit F).[2]

Performance Solutions is submitting herewith an additional expert declaration from Justin Lewis, a CPA and forensic accountant, addressing how Performance Solutions has been irreparably harmed by PowX’s infringement. *See* Declaration of Justin Lewis (herein, “Lewis Decl.”). As Mr. Lewis explains, PowX’s sales are detrimental to Performance Solutions and its licensing program. Lewis Decl. ¶¶ 14-32. PowX has diverted a significant amount of sales from Performance Solutions’ licensees by selling its product at a significantly lower price than the price at which Performance Solutions’ licensees Halcyon and Implus sell their products. *Id.* ¶¶ 19-22. PowX also has been benefiting from Performance Solutions’ efforts with Amazon to remove other companies’ infringing products by being an indirect (and unintended) beneficiary of Performance Solutions’ efforts – stopping infringing sales by other companies allows PowX to obtain additional sales after those infringing competitors leave the market. *Id.* ¶ 21. Performance Solutions also

[2] During the ’112 reexamination, several claims of the ’112 Patent were amended to correct a typo reciting a “body” of the device instead of a “core” of the device. The amendments were accepted by the Examiner and the amended claims were determined to be patentable over the prior art. *See* Puri Decl., Exhibit G, p. 20.

has another major concern: it is unlikely that PowX will have the ability to pay damages to Performance Solutions for its infringement if this action were to proceed to trial and judgment. Lewis Decl., ¶ 33.

Due to these exigent circumstances and the immediate and irreparable harm to Performance Solutions, Performance Solutions respectfully requests that the Court enter a preliminary injunction against PowX.

## II. BACKGROUND OF THE DISPUTE

Kipp K. Dye ("Dye"), founder and manager of Performance Solutions, is a pioneer in the foam roller industry. Dye Decl. ¶ 2. As a licensed physical therapist with decades of experience and as a trained massage therapist, Dye recognized his clients' need for a portable device that can extend into soft tissue and increase flexibility and mobility of a user. *Id.* ¶ 7. As a result, Dye came up with the idea of a cylindrically shaped foam roller with projections that could reach into a user's soft tissue. *Id.* Dye has curated an extensive portfolio of patents applicable to the foam roller industry. *Id.* ¶ 8. Dye's patents are assigned to Performance Solutions. *Id.*

In November 2018, Performance Solutions began reporting infringing rollers to Amazon and asking Amazon to remove those products from its website. *Id.* ¶ 15. In November 2020, Ron Johnson Engineering Inc. filed four *ex parte* reexamination petitions, one each against the '167, '112, '890, and '260 Patents. *Id.* ¶ 16. In December 2021, Amazon notified Performance Solutions that it would be reinstating infringing rollers that were previously removed from its website due to the finality of an examiner's office action in the reexaminations of the '167, '112, '890, and '260 patents. *Id.* Consequently, many companies were able to sell unauthorized products while Performance Solutions' patents were under reexamination. *Id.* PowX was one of those companies:

according to PowX's Amazon listings, PowX first began selling foam rollers on Amazon in December 2022, about a year after Amazon reinstated infringing rollers on its website. *Id.*

On August 23, 2022, after Performance Solutions filed its appeal briefs with the USPTO's PTAB, the examiner at the USPTO reopened and restarted the reexaminations of '167, '112, '890, and '260 Patents, thereby retracting the finality of the examiner's office action. *Id.* ¶ 17. Three days later, August 26, 2022, Performance Solutions notified Amazon that the finality of the office action had been retracted, and asked Amazon whether it will proceed with removing infringing rollers from Amazon's site. *Id.* Amazon directed Performance Solutions to its APEX program for submitting infringement complaints. *Id.* However, because the reexaminations were not closed, Performance Solutions was unable to remove most of the infringing products sold by other companies on Amazon's website. *Id.* Among those companies infringing Performance Solutions' patents by selling products on Amazon was PowX, which Performance Solutions had reported to Amazon in March 2023, but Amazon declined to remove PowX's Accused Product. *Id.* ¶ 21.

The reexaminations of the '167, '112, '890, and '260 Patents proceeded to an appeal in which the PTAB reversed the Examiner's findings on all 107 claims in these four patents. *Id.* ¶ 18. As a result of the PTAB's decisions, the Examiner issued in January 2024 a Notice to Issue a Reexamination Certificate with respect to each of the four patents under reexamination, thereby concluding the four reexaminations in Performance Solutions' favor. *Id.*

Several weeks after the reexaminations concluded, Performance Solutions received an email from Amazon that included a letter from PowX sent to Amazon on March 22, 2023. *Id.* ¶ 22. PowX included a picture of the Accused Product in its final manufactured state, a state in which the core is hidden from view. PowX misleadingly referred to the Accused Product in its letter as including a "hollow inner cavity" without any mention or reference to it having a hollow

plastic ***core***. PowX's statements and actions likely gave Amazon the false impression that the Accused Product does not have a core as required by certain claims of the Asserted Patents.

On January 29, 2024, after all four reexaminations concluded, Performance Solutions filed a new APEX application to remove the Accused Product due to its infringement of at least Claim 1 of the '112 Patent. *Id.* ¶ 23. On February 21, 2024, PowX's owner, Israel Laufer ("Laufer"), emailed Performance Solutions' Dye stating that Laufer is "keen to discuss this matter further with you [Dye] to explore a possible royalty or licensing agreement." Dye Decl. ¶ 24. Dye emailed Laufer the next day requesting sales information relating to the Accused Product. *Id.* ¶ 25. Rather than responding to Dye's email, PowX filed its Complaint the very next day. *See* Dkt. No. 1. On February 24, 2024, having not heard back from Laufer, Dye sent Laufer one of the PTAB's decisions in the reexaminations to impress on him the strength of the validity of Performance Solutions' patents, but unbeknownst to Dye, Laufer's company, PowX, had filed a Complaint against Performance Solutions the preceding day. Dye Decl. ¶ 26.

## III. LEGAL STANDARDS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. § 283 is governed by Federal Circuit law. *Revision Military, Inc. v. Balboar Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012).

"The Supreme Court has observed that the decision of whether to award preliminary injunctive relief is often based on 'procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *Mullins v. City of New York*, 626 F.3d 47, 51-52 (2d Cir.

2010) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). For example, "hearsay evidence may be considered by a district court in determining whether to grant a preliminary injunction." *Mullins*, 626 F.3d at 52.

## IV. ARGUMENT

### A. Performance Solutions Has a Likelihood of Success on the Merits Because the Accused Product Infringes Performance Solutions' Patents.

Under Federal Circuit law, a patent owner "need not meet the Second Circuit's heightened 'clear or substantial likelihood' standard, but rather the Federal Circuit's standard of whether success is more likely than not." *Revision Military*, 700 F.3d at 525. Performance Solutions has selected Claim 1 of the '112 Patent as a representative claim to show that Performance Solutions is more likely than not to succeed on its infringement claim against PowX for at least one claim of the Asserted Patents. Due to the large number of patents and claims that are infringed by PowX, it is not feasible to address infringement of the claims from each patent in this brief. Instead, Performance Solutions is filing herewith claim charts showing how PowX infringes at least one claim from each of the five Asserted Patents. *See* Puri Decl. Exhibits L-P.

Claim 1 of the '112 Patent recites (with [1a] and [1b] added for reference purposes):

> A two piece therapeutic, fitness, and sports enhancement device comprising:
>
> [1a] a first piece including an entirely cylindrically shaped core made of closed cell foam, rubber or plastic and having a diameter of about 3 inches to about 15 inches and;
>
> [1b] a second piece including an overlay completely surrounding the core, the overlay made of closed cell foam, rubber, or plastic and including a plurality of solid projections having a predetermined shape configured to extend into soft tissue of a user to enhance mobilization of soft tissue and optimize body core strength and balance training.

**1. Claim 1 Preamble: "A two piece therapeutic, fitness, and sports enhancement device"**

PowX markets its Accused Product as a "physical therapy and exercise" roller "to help runners lifters, yogis, those recovering from injury, and more," and therefore the Accused Product falls within the scope of a "therapeutic, fitness, and sports enhancement device." *See* Lewis Decl., Exhibit C. As shown below, the Accused Product contains two pieces – a core and an overlay:




The Accused Product thus has the elements of the preamble of Claim 1 of the '112 Patent.

**2. Element [1a]: "a first piece including an entirely cylindrically shaped core made of closed cell foam, rubber or plastic and having a diameter of about 3 inches to about 15 inches"**

**a. The Accused Product's core is entirely cylindrically shaped.**

According to Dr. Lawrence Copley: "a cylinder is defined as an object having a generally uniform cross-section along its length." (Copley Decl., ¶ 11). Dr. Copley examined the Accused Product's core with the core partially and completely removed from the overlay. According to Dr. Copley: "The pictures shown below accurately depict the roller that I examined with the core partially and completely removed from the overlay."





*Id.* ¶ 12. Dr. Copley examined the Accused Product and concluded that the core of the Accused Product is entirely cylindrically shaped and "meets all variations of the term 'cylindrically shaped' appearing in the five Asserted Patents, *e.g.*, the '112 Patent ('entirely cylindrically shaped'), '167 Patent ('entirely cylindrically shaped'), '890 Patent ('entirely cylindrically shaped'), '921 Patent ('completely cylindrically shaped'), and '260 Patent ('cylindrically shaped')." *Id.* ¶ 13.

In its March 22, 2023 letter to Amazon, PowX stated its position that "the PowX product does NOT feature a core" and that the Accused Product features only "a hollow inner cavity." Dye Decl., Exhibit A, p. 2. Dr. Copley concluded that PowX's statements to Amazon were inaccurate:

> I have reviewed PowX's letter to Amazon on March 22, 2023 in which PowX stated that "the PowX Product is [*sic*] has a hollow inner cavity and its [*sic*] does NOT have a 'cylindrically shaped core' as required by Claim 1 [of the '112 Patent]."
>
> I disagree with PowX's statement to Amazon. A cylindrically shaped core refers to the shape of the core and not whether the core is hollow or *filled*. . . . The shape of an object is not directly related to whether the object is filled, partially filled or hollow.

*Id.* ¶¶ 14-15. PowX's own customers refer to the plastic inner tube as a "core." For example, in a review of the Accused Product on Amazon, a customer submitted a photo of the Accused Product distinguishing the core from the overlay stating:

> Each roller has a thick, hard plastic core. That's why the foam doesn't crush under *body* weight. If you look at the top of the attached photo you can see the foam separated from the black plastic core with a pen, so you can see how thick the core is.[3]

Puri Decl. ¶ 7 and Exhibit Q.

The Accused Product thus meets the first part of element [1a] of Claim 1 of the '112 Patent.

---

[3] *https://www.amazon.com/TriggerPoint-Grid-Foam-Roller-Multi-Density/dp/B0040EGNIU/*

#### b. The Accused Product's core is made from plastic.

Dr. Chris Scott, a material scientist and Professor of Polymer Processing and Materials Processing at the Massachusetts Intitute of Technology, inspected and tested the Accused Product and concluded that the cylindrically shaped core is made from a plastic:

> I have personally inspected and tested an exemplar roller identified as "POWX Teardrop Foam Roller 18" HIGH DENSITY." I examined this product *and* sectioned it to obtain specimens for testing . . . .
>
> This product further includes a cylindrically shaped core. The material that the core is made of has the appearance of a manufactured plastic and the core has upon its surface vestigial marks that are typical of manufactured plastic parts. I cut the core using a fine-toothed hack saw blade and then it was skived with a scalpel to obtain small specimens of the material of the core interior. These small specimens were tested by Fourier transform infrared spectroscopy (FT-IR). *Analysis* of the test results shows that the core is made of a polypropylene-based formulation. Polypropylene is a plastic material. These results indicate that the core is made of plastic.

*See* Scott Decl. ¶ 15. The Accused Product thus meets the second part of element [1a] of Claim 1 of the '112 Patent.

#### c. The diameter of the Accused Product's core is 4.3 inches.

Dr. Ryan Abbott, a medical doctor and Adjunct Assistant Professor of Medicine at UCLA, inspected the Accused Product and determined that the diameter of the core of the Accused Product meets the claimed range recited in Claim 1 of the '112 Patent of "about 3 inches to about 15 inches." According to Dr. Abbott: "As illustrated on pages 2–4 of the '112 Claim Chart, the first piece includes an entirely cylindrically shaped core made of plastic, with a diameter of about 4.3 inches." Abbott Decl. ¶ 19. The '112 Claim Chart provides an illustration of the measurement taken of the diameter of the Accused Product's core, as shown below:



Puri Decl., Exhibit M, p. 4. The Accused Product thus meets the third part of element [1a] of Claim 1 of the '112 Patent. Because all three parts of element [1a] are present in the Accused Product, element [1a] of the '112 Patent is present in the Accused Product.

**3. Element [1b]: "a second piece including an overlay completely surrounding the core, the overlay made of closed cell foam, rubber, or plastic and including a plurality of solid projections having a predetermined shape configured to extend into soft tissue of a user to enhance mobilization of soft tissue and optimize body core strength and balance training."**

**a. The overlay of the Accused Product completely surrounds the core.**

As shown in the photo of the Accused Product below, the overlay completely surrounds the plastic core piece:




Puri Decl., Exhibit M, p. 4-5. Dr. Abbott inspected the Accused Product and confirmed that the overlay completely surrounds the core: "As illustrated on pages 4–6 of the '112 Claim Chart, the

second piece includes an overlay completely surrounding the core." *See* Abbott Decl. ¶ 20. The Accused Product thus meets the first part of element [1b] of Claim 1 of the '112 Patent.

**b. The overlay of the Accused Product is made from a closed cell foam.**

Dr. Scott examined the material of the overlay of the Accused Product and concluded that it is made from a closed cell foam. According to Dr. Scott:

> I have personally inspected and tested an exemplar roller identified as "POWX Teardrop Foam Roller 18" HIGH DENSITY." I examined this product and sectioned it to obtain specimens for testing. This product *is* cylindrically shaped and includes an overlay with a plurality of solid projections.
>
> I sectioned the overlay using a fresh razor blade to obtain several *specimens* that included surfaces where the interior was exposed and could be examined using an optical stereomicroscope. . . .
>
> I examined each of the exposed surfaces of the overlay specimens using the stereomicroscope with magnifications in the range of 8X to 80X. On every surface I observed numerous cells (voids), indicating that the material is a foam. A large majority of the cell faces were closed, with thin polymer membranes isolating each cell from the adjacent cells – indicating that the type of foam is a closed cell foam. This material structure indicates that the overlay is made of closed cell foam.

Scott Decl. ¶¶ 12-14. The Accused Product thus meets the second part of element [1b] of Claim 1 of the '112 Patent.

**c. The overlay of the Accused Product includes a plurality of solid projections having a predetermined shape configured to extend into soft tissue of a user to enhance mobilization of soft tissue and optimize body core strength and balance training.**

Dr. Abbott inspected the solid projections on the overlay of the Accused Product and concluded that they have a predetermined shape and are configured to extend into soft tissue of a user to enhance mobilization of soft tissue and optimize body core strength and balance training. According to Dr. Abbott:

> As illustrated on pages 5–7 of the '112 Claim Chart, the second piece includes a plurality of solid projections having a predetermined shape configured to extend into a user's soft tissue to enhance mobilization of soft tissue and optimize body core strength and balance training….
>
> It is my opinion from having directly examined the Accused Product that the projections are configured to extend into soft tissue. This is based on the tear-dropped shape of projections extending outward from the roller, the projection height of approximately 3/8th of an inch, and the relatively firm density of the overlay which is constructed form ethylene vinyl acetate all of which is designed to extend into soft tissue.
>
> In fact, the Accused Product is advertised as having projections configured to extend into soft tissue as claimed by the Performance Patents as illustrated by the Claim Charts.

Abbott Decl. ¶ 21-23. The '112 Claim Chart includes several images from PowX's marketing materials that show the Accused Product being used to optimize body core strength and balance training. *See* Puri Decl., Exhibit M. The Accused Product thus meets the third part of element [1b] of Claim 1 of the '112 Patent. Because all three parts of element [1b] are present in the Accused Product, element [1b] of the '112 Patent is present in the Accused Product.

Based on the foregoing, the Accused Product meets every element of at least Claim 1 of the '112 Patent. In addition to the '112 Patent, the Accused Product also infringes at least Claim 1 of the '167, '890, and '260 Patents as shown in the claim charts filed herewith (Puri Decl. Exhibits L, N and O). Performance Solutions has therefore shown that it will likely succeed on the merits of its claim of infringement of at least Claim 1 of the '167, '112, '890, and '260 Patents.

Performance Solutions has also prepared an infringement chart of Claim 1 of the '921 Patent. *See* Puri Decl. Exhibit P. This chart was prepared to address the statement made in PowX's letter to Amazon on March 22, 2023 in which PowX asserted that the Accused Product has no core. *See also* Abbott Decl., ¶ 28. According to PowX's letter to Amazon: "the PowX product does NOT feature a core…. As illustrated, the PowX Product is has [*sic*] a hollow inner cavity

and its [*sic*] does NOT have a 'cylindrically shaped core' as required by Claim 1." Dye Decl., Exhibit A. As shown in Section IV.A.2 above, the Accused Product has a clearly defined core made of plastic that is distinct from its overlay which is made from a closed cell foam. *Id.* Even if one were to consider PowX's implausible argument that the Accused Product lacked a core, Performance Solutions has a one-piece roller patent, the '921 Patent, and a claim chart has been prepared showing how the Accused Product would still infringe the '921 Patent. *See* Puri Decl., Exhibit P; Abbott Decl. ¶ 28. Therefore, the Accused Product infringes at least one claim of each of Performance Solutions' Asserted Patents.

### B. PowX Has Failed to Raise Any Substantial Question Concerning the Validity and Enforceability of the Asserted Patents.

"[P]atent[s] enjoy[] the same presumption of validity during preliminary injunction proceedings as at other stages of litigation." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). Where "the alleged infringer responds to the preliminary injunction motion by launching an attack on the validity of the patent, the burden is on the challenger to come forward with evidence of invalidity, just as it would be at trial." *Id.* at 1377. "The patentee, to avoid a conclusion that it is unable to show a likelihood of success, then has the burden of responding with contrary evidence, which of course may include analysis and argument." *Id.* An alleged infringer must raise a "substantial question" concerning validity (or unenforceability) for an injunction not to issue. *See Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997)).

PowX has not challenged the validity or enforceability of the '921, '167, '890, or '260 Patents, so no substantial question concerning the validity or enforceability of those patents exists. As to the '112 Patent, PowX merely makes conclusory allegations about invalidity and unenforceability by stating that "[t]he '112 Patent is invalid for failure to comply with at least

35 U.S.C. §§ 102 and/or 103" (Dkt. No. 9, ¶ 39) and that "the '112 Patent was obtained by inequitable conduct upon the USPTO and thus is unenforceable" (Dkt. No. 9, ¶ 44). PowX's generic allegations fail to raise a substantial question concerning the validity or enforceability of the '112 Patent.

In addition to the presumption of validity that attaches to each of the Asserted Patents, compelling reasons exist why Performance Solutions will likely succeed on any challenges to the validity of its patents because the '167, '112, '890, and '260 Patents recently emerged from *ex parte* reexaminations before the USPTO. *See also* Abbott Decl. ¶¶ 33-34. All 70 original claims and 37 newly added claims across all four patents were found patentable over dozens of prior art references. *See* Puri Decl., Exhibits H-K. The USPTO issued Certificates of Reexaminations for the '167, '890, and '260 Patents (*see id.*, Exhibits B, D, and E) and a Notice of Intent to Issue a Reexamination Certificate for the '112 Patent (*see id.*, Exhibit F).

### C. Performance Solutions Will Suffer Irreparable Harm Not Compensable by Monetary Damages Absent a Preliminary Injunction.

Price erosion, loss of market position, and loss of business opportunities are indicia of irreparable harm. *See Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under this court's precedent, '[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.'") (quoting *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012)); *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (finding irreparable harm based on price erosion and loss of market position). "[T]he mere possibility of future monetary damages does not defeat a motion for preliminary injunction." *Celsis*, 664 F.3d at 930 (citing

*Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1361-62 (Fed. Cir. 2008), and *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382 (Fed. Cir. 2006)).

**1. PowX and Performance Solutions' Licensees Are in Direct Competition.**

Performance Solutions' expert Mr. Lewis' declaration contains his opinions about the irreparable harm to Performance Solutions and its licensees by PowX's infringement. He begins his analysis by discussing the direct competition between PowX and Performance Solutions' licensees who sell "321 Strong Rollers" and "TriggerPoint Rollers":

> - 321 Strong Rollers, TriggerPoint Rollers, and the Accused Product are sold on Amazon and include the claimed elements described in Paragraph 11 of this declaration. As such, they compete head-to-head for the same sales on Amazon. All three brands of rollers are among the top sellers of foam rollers on Amazon, according to the Best Sellers Rank ("BSR") within the Foam Roller category published by Amazon on April 2, 2024. Currently, 321 Strong Roller licensed products rank as second, fifteenth, twenty-first, and twenty-fourth on Amazon's BSR in the Foam Roller Category. TriggerPoint Roller licensed products rank as fifth, twenty-third and twenty-fifth on Amazon's BSR in the Foam Roller Category. PowX's Accused Product is currently listed as the tenth and thirteenth on Amazon's BSR in the Foal Roller Category.
> - Performance Solutions' Licensees and PowX promote the use of projections on their foam rollers in their marketing materials and tout their benefits over smooth rollers.
> - Performance Solutions' Licensees and PowX conduct similar marketing activities promoting their products, including through creating and managing company pages through Amazon.

Lewis Decl. ¶ 12. As Mr. Lewis concluded (*id.* ¶ 12):

> These factors contribute to my conclusion that Performance Solutions' Licensees and PowX are in direct competition, producing, marketing, and selling similar products targeted to a similar set of customers.

There can be no genuine dispute that PowX and Performance Solutions' licensees are in direct competition by producing, marketing, and selling similar products targeted to a similar set of customers.

### 2. Performance Solutions Will Suffer Price Erosion.

Mr. Lewis explains how price erosion can irreparably harm a patent owner's business:

> Price erosion refers to a decline in pricing for products due to increased competition. In patent infringement matters, it occurs when an unlicensed or infringing product is sold at a lower price than other competing products in the marketplace. In certain instances, this may result in a patent holder having to reduce their own prices to compete. Either way, this form of competition can cause consumers' perception of value for products in this category to decrease, irreparably harming the potential value of the patent holders' future business.

Lewis Decl. ¶ 14. Mr. Lewis applied these well-known concepts and concluded that PowX has engaged in price-eroding competition that will irreparably harm Performance Solutions:

> Importantly, PowX has already begun this type of price-eroding competition by selling the Accused Product at a lower price than the licensed products sold by Performance Solutions' Licensees, as shown in the following table:

**Table 2**
**Sales Prices of Licensed and Unlicensed Products on Amazon**

| **PowX** | | **321 Strong** | **TriggerPoint** | |
|---|---|---|---|---|
| Medium Density | High Density | Medium Density | Grid Multi-Density Roller | Core Foam Roller |
| $20.95 | $23.95 | $29.25 | $36.41 | $64.99 |

**Table 3**
**PowX Percentage Discount Over Licensees' Products**

| **PowX's Sales Price Discounted Below 321 Strong** | **PowX's Price Discounted Below TriggerPoint** |
|---|---|
| 22.1% - 39.6% | 52.0% - 229.3% |

> Already, the presence of PowX's underpriced products may have eroded the licensee pricing power derived from Performance Solutions' intellectual property rights. Permitting PowX to continue to make sales at this discounted price risks further impacting consumer perceptions regarding the value of foam roller products, and their corresponding willingness to pay. Because of this, price erosion is often challenging to quantify with precision, and monetary damages are unlikely to fully compensate Performance Solutions.

Lewis Decl. ¶¶ 15, 16. Mr. Lewis' analysis demonstrates the substantial risk Performance Solutions (and its licensees) face if PowX is not preliminarily enjoined.

### 3. PowX Has Taken Substantial Market Share Away from Performance Solutions and Its Licensees.

Mr. Lewis explains how Performance Solutions and its licensees have been adversely impacted by PowX holding a significant market share among the top sellers of deep tissue foam rollers on Amazon:

> Since January 2024 when Performance Solutions was able to resume its enforcement efforts on Amazon (upon conclusion of four *ex parte* reexaminations), PowX has consistently held approximately a twenty-two percent market share on Amazon among the top 25 best sellers of deep tissue foam rollers at 5-6 inch diameters. This is reflected in the following table:

**Table 4**
**PowX's Deep Tissue Foam Roller Market Share**
**Within Top 25 BSR Products**

| | February 11, 2024 (for preceding 30-day sales) | | | April 5, 2024 (for preceding 30-day sales) | | |
|---|---|---|---|---|---|---|
| | PowX | Non-PowX Top 25 Deep Tissue Foam Rollers | Total | PowX | Non-PowX Top 25 Deep Tissue Foam Rollers | Total |
| No. of Units Sold | 5,358 | 18,624 | 23,982 | 5,370 | 20,220 | 25,590 |
| Market Share | 22% | 78% | 100% | 21% | 79% | 100% |

Lewis Decl. ¶ 20. Mr. Lewis further explains how PowX has directly benefitted from Performance Solutions' enforcement efforts on Amazon:

> As a direct, but unintentional, beneficiary of Performance Solutions' enforcement efforts on Amazon following the conclusion of the *ex parte* reexaminations in January 2024, PowX has also been able to significantly increase its sales on Amazon.

**Table 5**
**PowX's Sales Have Increased Since**
**Performance Solutions' Enforcement Efforts on Amazon**

| | February 6, 2024 (for preceding 30-day sales) | April 5, 2024 (for preceding 30-day sales) |
|---|---|---|
| Units Sold | 4,730 | 6,450 |
| % Increase in Units Sold from 2/6/2014 | - | +36.4% |

Lewis Decl. ¶ 21. Mr. Lewis concluded that PowX's continued sales irreparably harm Performance Solutions and its licensees:

> PowX's market share amongst the top 25 deep tissue foam roller products on Amazon's BSR (approximately 22%) adversely impacts the ability of Performance Solutions' licensees to sell their products on Amazon because any sale by PowX likely results in one less sale for a Performance Solutions licensee. The loss to Performance Solution's licensees may not be recoverable without Performance Solutions' involvement in expensive and time-consuming litigation, and it may be difficult to distinguish the harm suffered by one licensee relative to the other licensees.

Lewis Decl. ¶ 22. Mr. Lewis' analysis demonstrates how the continued sale of the Accused Product will irreparably harm Performance Solutions and its licensees.

#### 4. Performance Solutions Will Lose Business Opportunities and Suffer Irreparable Harm to Its Licensing Business.

Mr. Lewis explains how PowX's presence on Amazon has resulted in lost business opportunities for Performance Solutions and its licensees:

> The Accused Product's continued presence on Amazon directly results in lost business opportunities for Performance Solutions and its licensees and harms Performance Solutions' licensing business.

> As discussed in Paragraphs 12 and 20, the Accused Product and Performance Solutions' licensed products appear in the top 25 of Amazon's BSR list for foam roller products. According to Amazon, BSR is a "reflection" of sales volumes, and can be used to "estimate product demand and make strategic decisions about what products to sell." According to a third-party provider of online sales tools, Amazon's BSR provides a competitive edge: "A lower BSR [product]… stands out among similar products in the category, making it more likely to be chosen by customers. In a marketplace with various options, having a lower BSR can lead to increased sales and market share." Thus, customers shopping on Amazon for deep tissue foam rollers will consider the Accused Product alongside those of Performance Solutions' licensees.

Lewis Decl. ¶¶ 23, 24. Mr. Lewis further explains how Performance Solutions' licensees must incur additional marketing expense to compete with PowX's unlicensed sales:

> Additionally, I understand that Performance Solutions' licensees must now incur additional marketing expense in order to promote their products so that they can compete with the sales made by PowX of a lower priced product that does not include a licensing fee. For example, the licensed 321 Strong Rollers are currently running "Sponsored" Ads at a cost to 321 Strong and Halcyon. In contrast, as set forth in Kipp Dye's supporting declaration, PowX has not been running sponsored ads on Amazon and it appears to have no reason to run ads because the strength of its unauthorized sales has allowed it to automatically land on the first page of the Amazon's foam roller listings where 80% of clicks occur on first page.

Lewis Decl. ¶ 25. Mr. Lewis also explains how PowX's public dispute impacts Performance Solutions' ability to survive as a small business:

> In addition, PowX's public dispute of Performance Solutions' patent rights sends a harmful message to Performance Solutions' existing and potential licensees: "If PowX does not have to take a license, why should they?" This message poses a critical threat to Performance Solutions' continued operations in all facets of its business as it could encourage:
>
> - Potential and actual infringers to enter the market or scale up operations with the expectation that they will not need to take a license;

> - Prospective licensees to refuse to engage in or cease discussions with Performance Solutions; and
>
> - Existing licensees to refuse to pay continued royalties or demand repayment of past royalties.
>
> … Performance Solutions' ability to survive as a small business would be put in jeopardy by the realization of these threats during the pendency of this litigation.

Lewis Decl. at ¶¶ 28, 29. Mr. Lewis further explains how the ability of infringers like PowX to compete on Amazon has impacted Performance Solutions' ability to enter into licenses:

> [T]he existence of unlicensed products may encourage other sellers not to take a license, or the loss of existing Performance customers (i.e. licensees). For example, I understand that Performance was in negotiations with a potential licensee in December 2021. However, after Amazon readmitted unlicensed sellers of deep tissue foam roller products into the market, that potential licensee walked away from negotiations. This example highlights how the entry of unauthorized products on Amazon can directly lead to loss of Performance Solutions customers (i.e. licensees).

Lewis Decl. at ¶ 29. Mr. Lewis also discusses the reputational harm to Performance Solutions by PowX remaining on Amazon:

> Permitting PowX to remain in the market threatens Performance Solutions with irreparable reputational harm…. Both Performance Solutions' Licensees' Products and the Accused Product are sold on Amazon, and PowX's Accused Product is priced at a substantial discount. To the extent this discounted price conveys to the consumer that the product is of inferior quality, this may impact customers' perceptions regarding Defendant's innovative product development in this market. Moreover, while PowX remains in the market with products it maintains are non-infringing, Performance Solutions' current and prospective licensees may view a license as financially more onerous.

Lewis Decl. ¶¶ 30, 31. Finally, Mr. Lewis also considers PowX's financial position and whether PowX will have the ability to pay damages to Performance Solutions:

> Based on the limited publicly available information, PowX appears to be a relatively small company that may not have the ability to pay damages to Performance Solutions that would result from PowX's

> ongoing infringement for the duration of this litigation. . . . According to the New York Department of State records, PowX's effective date of incorporation is October 26, 2022, indicating that PowX has only been operating for a limited amount of time. The business address listed in the Complaint and on the NY Department of State's website is associated with a single family home, another indicum that PowX may not have business assets to satisfy a future judgment.

Lewis Decl. at ¶ 33 (footnotes omitted).

Accordingly, the first two factors in the four-part preliminary injunction analysis – likelihood of success and irreparable harm – weigh heavily in favor of the issuance of a preliminary injunction.

**D. The Balance of Equities Favors Performance Solutions.**

The hardship suffered by Performance Solutions (and its licensees) if a preliminary injunction does not issue is the irreparable harm described above. In contrast, PowX has known of Performance Solutions' Asserted Patents since at least March 2023, but turned a blind eye to those patents based on a false statement to Amazon that the Accused Product does not contain a core. The balance of equities do not favor PowX under the circumstances of its actions and false statement to Amazon. The third factor supports the issuance of a preliminary injunction.

**E. The Public Interest Favors Granting Performance Solutions' Motion.**

Courts recognize a public policy of protecting patent rights. *See Apple Inc. v. Samsung Elecs. Co.*, 801 F.3d 1352, 1365 (Fed. Cir. 2015) ("the public interest nearly always weighs in favor of protection [of a patentee's intellectual] property rights in the absence of countervailing factors"). PowX has known of Performance Solutions' Asserted Patents since at least March 2023. The public interest favoring protecting patent rights is strongly implicated here because PowX chose to continue selling the Accused Product based on a false representation to Amazon that its

product does not include a core. The public interest is not served when companies like PowX are incentivized to make false representations about products in order to circumvent a party's patents.

In addition, the public will not be harmed by the removal of the Accused Product from the marketplace because the public can obtain the patented foam rollers from Performance Solutions' licensees. *See Metalcraft of Mayville, Inc. v. the Toro Co.*, 848 F.3d 1358, 1369 (Fed. Cir. 2017) (affirming lower court's finding that the public interest favored the issuance of an injunction "in light of the importance of encouraging innovation and in light of the fact that the public can still obtain the patented suspension system from Scag [the Patent Owner]").

The public interest factor, the fourth part of the four-part preliminary injunction test, therefore weighs in favor of the issuance of a preliminary injunction.

## V. CONCLUSION

For the reasons stated above, Performance Solutions respectfully requests that the Court issue a preliminary injunction enjoining Plaintiff PowX Inc. from making, using, importing, offering for sale, and selling its "Textured Foam Rollers for Muscle Massage" product. Performance Solutions is submitting a proposed order to that effect herewith.

DATED: April 10, 2024

Respectfully Submitted,

/s *Ashe Puri*

Ashe Puri
MAYNARD NEXSEN LLP
10100 Santa Monica Boulevard, Suite 550
Los Angeles, CA 90067
Telephone: (310) 596-4344
Facsimile: (205) 714-6415
apuri@maynardnexsen.com

John M. Hintz
MAYNARD NEXSEN PC
The Fred F. French Building
551 Fifth Avenue, Suite 1600
New York, NY 10176
Telephone: (646) 609-9280
Facsimile: (205) 714-6396
jhintz@maynardnexsen.com

*Attorneys for Defendant*
*Performance Solutions, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2024, a true and correct copy of foregoing document was served on counsel of record for Plaintiff PowX Inc. via the Court's CM/ECF system in accordance with Local Civil Rule 5.2(a).

Executed this 10th day of April, 2024 at Los Angeles, California.

/s/ *Ashe Puri*
Ashe Puri