USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/3/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POWX INC.,<br><br>               Plaintiff,<br><br>-against-<br><br>PERFORMANCE SOLUTIONS, LLC,<br><br>               Defendant. | 24-CV-01389 (MMG)<br><br>**OPINION & ORDER** |
| PERFORMANCE SOLUTIONS, LLC,<br><br>               Counter-Plaintiff,<br><br>-against-<br><br>POWX INC., TARTER KRINSKY & DROGIN LLP, ISRAEL LAUFER, THE LAUFER GROUP INC., ALBION PLACE INC., IL DEALS INC., and QTEST INC,<br><br>               Counter-Defendants. | |

MARGARET M. GARNETT, United States District Judge:

This action began as a patent infringement case brought by Plaintiff and Counterclaim Defendant PowX Inc. ("PowX") against Defendant and Counterclaim Plaintiff Performance Solutions, LLC ("Performance Solutions"), seeking a declaratory judgment that would allow PowX to continue selling textured foam rollers, primarily on Amazon. Soon after the case was initiated, Performance Solutions brought counterclaims against PowX, alleging that PowX was infringing on Performance Solutions' patents. Following discovery, Performance Solutions filed supplemental counterclaims against PowX, its owner, Israel Laufer ("Mr. Laufer"), five corporations—The Laufer Group Inc. ("Laufer Group"), Albion Place Inc. ("Albion Place"),

1

Il Deals Inc. ("Il Deals"), and QTest Inc. ("QTest")—for which Mr. Laufer is the sole owner (together the "Corporate Counter-Defendants"), and PowX's former counsel, Tarter Krinsky & Drogin LLP ("Tarter Krinsky"). The supplemental counterclaims alleged patent infringement, violations of New York Debt and Creditor Law § 273, and malicious prosecution. Neither PowX nor the Corporate Counter-Defendants have answered or otherwise responded to Performance Solutions' supplemental counterclaims. Performance Solutions now seeks (i) dismissal of PowX's original case for failure to prosecute; (ii) default judgment on its counterclaims; and (iii) to hold PowX in contempt for violating two Court orders. For the reasons set forth below, Performance Solutions' motions are GRANTED.

### RELEVANT FACTS[1] & PROCEDURAL HISTORY

Performance Solutions is a company that holds patents for cylindrically-shaped textured foam rollers. Dkt. No. 16-1 ¶¶ 7, 8. Performance Solutions owns U.S. Patent Nos. 9,345,921 ("the '921 Patent"); 9,539,167 ("the '167 Patent"); 9,656,112 ("the '112 Patent"); 10,278,890 ("the '890 Patent"); and 10,695,260 ("the '260 Patent") (collectively, "the Asserted Patents"). The Asserted Patents are all titled "Therapeutic, Fitness, and Sports Enhancement Device," Dkt. No. 14 at 9, and were issued between May 2016 and June 2020, *id.* at 9–10. Performance Solutions licenses the Asserted Patents to companies that manufacture, distribute, and sell foam rollers. Dkt. No. 16-1 ¶ 9. In November 2020, a company called Johnson Engineering Inc. filed four *ex parte* reexamination petitions against the '167, '112, '890 and '260 Patents. *Id.* ¶ 16.

---

[1] The following facts are taken from Performance Solutions' counterclaim complaint (Dkt. No. 14); motion for a preliminary injunction and accompanying declarations (Dkt. No. 16); motion for sanctions (Dkt. No. 99); and motion for default judgment (Dkt. No. 196). For purposes of default judgment, Performance Solutions' allegations are accepted as true, and all reasonable inferences are drawn in its favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

This action triggered a reexamination of the patents by the United States Patent and Trademark Office. *Id.* ¶ 17.

In December 2022, PowX began selling a product called "Textured Foam Rollers for Muscle Massage" (the "Accused Product") on Amazon. Dkt. No. 16-1 ¶ 20; Dkt. No. 14 at 10. On March 22, 2023, Performance Solutions filed a report with Amazon alleging that the Accused Product infringed on the '112 Patent. Dkt. No. 9 ¶ 2; Dkt. No. 14 at 10–11. Amazon declined to remove the Accused Product due to the ongoing reexamination of the '112 Patent. Dkt. No. 16-1 ¶ 21. By January 29, 2024, the reexamination of Performance Solutions' patents had concluded, and Performance Solutions filed a new application with Amazon to remove the Accused Product. *Id.* ¶ 23. Three weeks later, Mr. Laufer emailed Performance Solutions' co-owner stating that he was "keen to . . . explore a possible royalty or licensing agreement." *Id.* ¶ 24. In response, Performance Solutions identified the Asserted Patents to PowX and shared the reexamination decision for the '112 Patent. *Id.* ¶¶ 25, 26.

Unbeknownst to Performance Solutions, while Performance Solutions was corresponding with Mr. Laufer concerning a potential licensing agreement, PowX was preparing a lawsuit against it. On February 23, 2024, PowX filed a complaint seeking a declaratory judgment that (1) the Accused Product does not infringe the '112 Patent and (2) the '112 Patent is invalid and unenforceable. Dkt. No. 3 ¶¶ 31–44. The complaint alleged that the Accused Product could not have infringed the '112 Patent because the patent requires "an entirely cylindrically shaped core" which is absent from PowX's products. *Id.* ¶ 30.

On February 26, 2024, Amazon informed Performance Solutions via letter that, as a result of PowX's lawsuit, it would be "pausing Evaluation [pursuant to its internal patent-enforcement mechanism]. . . and deferring to the court's decision in this matter." Dkt. No. 16-1

¶ 27.  On February 28, 2024, Amazon sent a follow-up letter explaining, "[w]here a seller chooses to avail itself of the due process protections of court to litigate a claim of patent infringement, we will usually defer to that choice, and we have done so here. If you receive a judgment in your favor regarding this case, please submit a copy of the determination." *Id.* ¶ 28.

On April 10, 2024, Performance Solutions answered PowX's Complaint and filed counterclaims.  Dkt. No. 14.  Performance Solutions alleged that the Accused Product infringes on the Asserted Patents, and that PowX has known about these patents since at least March 2023. *Id.* at 10–11.  The same day, Performance Solutions moved for a preliminary injunction, requesting that the Court enjoin PowX from "making, using, importing, offering for sale, and selling its 'Textured Foam Rollers for Muscle Massage' product." Dkt. No. 16 at 25.

On June 14, 2024, following a multi-day hearing, the Court granted Performance Solutions' motion for a preliminary injunction, finding that Performance Solutions was likely to succeed on the merits of its patent infringement claims because "the Accused Product is likely to infringe on at least one, and up to four, of the five Asserted Patents." Dkt. No. 33 at 15.  The Court enjoined PowX from "making, using, importing, offering for sale, and/or selling PowX's 'Textured Foam Rollers for Muscle Massage' products . . . . or any other identical or substantially similar product" as well as from "[e]ffecting assignments or transfers, forming new entities, or creating and/or utilizing any Amazon storefront, other platform, or other means of making, using, importing, offering for sale, and/or selling the Accused Product for the purposes of circumventing or otherwise avoiding the activities enjoined herein" and "[i]nstructing, aiding, or abetting any other person or business entity from engaging in any activities" prohibited by the Court's order, until the case could be fully adjudicated on the merits. *Id.* at 33.

4

On November 18, 2024, the parties participated in a settlement conference before Magistrate Judge Parker. Dkt. No. 99 at 4. At the conference, Mr. Laufer represented that all of PowX's inventory had been destroyed or returned to China and thus, PowX had no funds to settle the case. *Id.* at 4, 11. However, documents and testimony provided during discovery, including during Mr. Laufer's deposition, revealed that between September and December 2024 Mr. Laufer had, in fact, liquidated and transferred PowX's inventory. *Id*. at 4. Given these events, the Court issued an order on December 2, 2024 (the "December 2 Order") requiring PowX to produce various documents concerning its inventory, tax, returns, and bank accounts. Dkt. No. 63.

On March 4, 2025, the Court allowed Tarter Krinsky to withdraw as PowX's counsel due to a conflict of interest. Dkt. No. 87. The Court provided PowX approximately two months— until a conference scheduled on May 8, 2025—to obtain new counsel. *Id.* On May 3, 2025, Performance Solutions moved for leave to file supplemental counterclaims. Dkt. No. 94. Performance Solutions sought to add claims against PowX for fraudulent conveyance of its assets in violation of N.Y. Debt. & Cred. Law § 273 as well as malicious prosecution. Dkt. No. 94-1. Performance Solutions also sought to bring claims against Tarter Krinsky for Malicious Prosecution and violations of N.Y. Judiciary Law § 487. *Id.* Finally, Performance Solutions sought to add Mr. Laufer and the Corporate Counter-Defendants to its claims under a veil-piercing theory. *Id.* On May 6, 2025, Performance Solutions filed a motion for sanctions and civil contempt against PowX for its alleged violation of the Court's preliminary injunction order by liquidating PowX's inventory and for failing to comply with the December 2 Order. Dkt. No. 103.

A conference was held on May 8, 2025.  No representative appeared on behalf of PowX, Mr. Laufer, or any of his other affiliated companies.  During the conference, the Court granted Performance Solutions' motion for leave to file supplemental counterclaims on all but the claim against Tarter Krinsky pursuant to N.Y. Judiciary Law § 487.  Dkt. No. 115 at 5:17–20.  On May 16, 2025, Performance Solutions filed its supplemental counterclaims. Dkt. No. 113.  On June 20, 2025, Mr. Laufer requested a 30-day extension to respond to the supplemental counterclaims. Dkt. No. 147.  The Court granted Mr. Laufer's request and construed it as a request also made on behalf of PowX and the Corporate Counter-Defendants.  Dkt. Nos. 150 & 158.  On July 21, 2025, Mr. Laufer filed an answer to the counterclaims as to him.  Dkt. No. 161.  Neither PowX nor the Corporate Counter-Defendants answered or otherwise responded to the supplemental counterclaims, nor has new counsel appeared for any of the counterclaim defendants.  Accordingly, on August 25, 2025, Performance Solutions moved for default judgment against PowX and the Corporate Counter-Defendants.  Dkt. No. 196.  On November 5, 2025, Mr. Laufer filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code.  Dkt. No. 204.

**DISCUSSION**

## I.    POWX IS IN CONTEMPT FOR VIOLATING THE COURT'S PRELIMINARY INJUNCTION AND DECEMBER 2 ORDER

Performance Solutions requests that the Court hold PowX in civil contempt for violating the Court's preliminary injunction and December 2 Order.  "A court possesses the inherent power to hold a party in civil contempt when (1) the order the party failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not been reasonably diligent and energetic in attempting to comply." *Nat'l Basketball Ass'n v. Design Mgmt. Consultants, Inc.*, 289 F. Supp. 2d 373, 376 (S.D.N.Y. 2003) (citing *EEOC v.*

*Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir. 1985)).

Each of these factors is satisfied as to PowX.

First, both orders were clear and unambiguous. "An order is 'clear and unambiguous' where it is 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed' or required." *Id.* at 377 (quoting *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir.1989)). The preliminary injunction order specifically enjoined PowX from "[m]aking, using, importing, offering for sale, and/or selling PowX's 'Textured Foam Rollers for Muscle Massage' products." Dkt. No. 33 at 33. The December 2 Order required PowX to, among other things, "produce to Performance Solutions all of its tax returns and bank records from 2022-present" and "produce to Performance Solutions all documents and communications sufficient to determine Mr. Laufer's personal finances, including all bank records and tax returns, from 2022-present." Dkt. No. 63 at 1–2. Both orders were clearly directed at PowX and specifically detailed the conduct that was prohibited or required.

Second, Performance Solutions has provided clear and convincing proof that PowX did not comply with either order. As to the preliminary injunction order, Mr. Laufer testified that he brokered a deal with a liquidation agent in August 2024 to arrange a liquidation sale of the 31,552 units of the enjoined product in inventory. Dkt. No. 198 at 88; Dkt. No. 91-4 at 87:2–24. This action unquestionably violated the preliminary injunction order by "offering for sale" the enjoined product. Dkt. No. 33 at 33. The record is also clear that PowX violated the December 2 Order. At his deposition, Mr. Laufer testified that he and PowX were the owners of multiple bank accounts for which PowX did not produce bank statements. *See, e.g.*, Dkt. No. 198 at 79 &

7

84. Thus, at a minimum, PowX did not produce "all bank records" for Mr. Laufer or PowX as required by the December 2 Order.

Third, PowX was not "reasonably diligent and energetic in attempting to comply" with either order. *Nat'l Basketball Ass'n*, 289 F. Supp. 2d at 376. Mr. Laufer testified that he did not even read the preliminary injunction order. Dkt. No. 99-3 at 204:12–16. And his blatant violation of the order demonstrates that he did not act reasonably diligently in attempting to comply with it. As to the December 2 Order, Mr. Laufer testified that he should have produced statements from certain bank accounts but did not do so. Dkt. No. 198 at 79. Furthermore, although PowX produced some bank account information, Performance Solutions identified multiple bank accounts for which PowX should have produced statements but did not. PowX's limited production does not amount to reasonable diligence in attempting to comply with the Court's Order. *See, e.g.*, *Huber v. Arck Credit Co., LLC*, No. 12-CV-08175 (JMF), 2016 WL 482955, at *3 (S.D.N.Y. Feb. 5, 2016) (finding that a party was not reasonably diligent where "[t]he limited number of documents that they produced are only a fraction of what was presumably responsive to" a request "for voluminous financial and business records").

Performance Solutions seeks a variety of sanctions in response to PowX's violation of the Court's orders. These include: (1) default judgment on its counter-claims; (2) dismissal of PowX's complaint with prejudice; (3) an order compelling Mr. Laufer to produce all bank statements of certain accounts; (4) enjoining Mr. Laufer from transferring funds out of any of his bank accounts pursuant to N.Y. Debtor & Creditor Law ("DCD") § 276(a)(3)(i); (5) appointing a receiver to take charge of the assets in Mr. Laufer's bank accounts and oversee execution and assignment of PowX's trademarks, Serial Nos. 97649954 and 97816096, to Performance Solutions pursuant to DCD § 276(a)(3); and (6) awarding Performance Solutions damages, legal

fees and costs. Dkt. No. 99 at 5. Several of these remedies—specifically the first, second, and sixth—overlap with the remedies Performance Solutions seeks on default judgment and are addressed below.

As to the third through fifth remedies, the Court is unable to order these sanctions due to Mr. Laufer's bankruptcy proceedings. When a bankruptcy petition is filed, the Bankruptcy Code mandates an automatic stay of, in relevant part, "the commencement or continuation . . . of a judicial . . . or other action or proceeding against the debtor." *In re Fogarty*, 39 F.4th 62, 69 (2d Cir. 2022). Mr. Laufer filed for bankruptcy on November 5, 2025. Dkt. No. 204. Accordingly, the proceedings against him are automatically stayed. That said, "Courts have recognized a non-statutory exception to the automatic stay where the goal of a civil contempt proceeding is to vindicate the dignity of the court rather than collect a pre-petition claim or obtain property of the estate." *In re White*, 478 B.R. 177, 183–84 (Bankr. S.D.N.Y. 2012). The remaining remedies Performance Solutions seeks do not fall within this exception. Specifically, the third, fourth, and fifth remedies appear aimed at ensuring that Performance Solutions can collect remedies for PowX and Mr. Laufer's legal violations by identifying, freezing, and taking control of Mr. Laufer's assets rather than vindicating the dignity of the Court. Accordingly, whatever Performance Solutions' entitlement to the relief, this Court cannot grant it without running afoul of the automatic stay.[2]

---

[2] The automatic stay does not extend to the Corporate Counter-Defendants or PowX for the reasons set forth in Performance Solutions' November 12, 2025 letter. *See* Dkt. No. 206.

9

## II.     POWX'S CLAIMS ARE DISMISSED FOR FAILURE TO PROSECUTE

### A.  Legal Standard for Failure to Prosecute

Performance Solutions moves for dismissal of PowX's claims in this action pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.  Under Federal Rule of Civil Procedure 41(b) "[i]f the plaintiff fails to prosecute or to comply with . . . a court order, a defendant may move to dismiss the action or any claim against it."  In considering a Rule 41(b) dismissal, courts must weigh five factors: (1) whether the plaintiff's failure to prosecute caused a delay of significant duration; (2) whether the plaintiff was given notice that further delay would result in dismissal; (3) the likelihood that the defendant will be prejudiced by further delay; (4) the balance between the need to alleviate court calendar congestion and the plaintiff's right to an opportunity for a day in court; and (5) the efficacy of lesser sanctions."  *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).

### B.  PowX Has Failed to Prosecute This Action

PowX has taken no action to prosecute this case since at least March 2025.  Accordingly, each of the five factors set forth in *Drake* weighs in favor of dismissal.  First, PowX's failure to prosecute this action has significantly delayed its resolution.  On March 4, 2025, the Court granted PowX's former counsel's motion to withdraw.  *See* Dkt. No. 87.  In order to provide time for PowX to obtain substitute counsel, the Court adjourned a previously scheduled conference with the parties for sixty days.  *Id.*  PowX did not obtain counsel within the time required by the Court, and neither Mr. Laufer nor any new counsel for PowX appeared at the rescheduled conference, despite being ordered to do so.  *See* Dkt. No. 115 at 2:19–20 ("T'll just note for the record that Mr. Laufer is not here and no counsel is here for PowX").  On May 16, 2025, Performance Solutions filed supplemental counterclaims against PowX.  Dkt. No. 113.  On July 1, 2025, after PowX failed to answer the supplemental counterclaims, the Court *sua sponte*

10

extended its deadline to obtain counsel and respond until July 20, 2025. Dkt. No. 159. That deadline elapsed, no counsel appeared on behalf of PowX, and PowX did not file any response to the supplemental counterclaims. Thus, over nine months have elapsed since PowX has taken any affirmative steps to prosecute this action, despite the Court granting numerous opportunities to do so. Such a period of delay "falls comfortably within the time frames found sufficient in successful Rule 41(b) motions to dismiss." *Peters-Turnbull v. Bd. of Educ. of City of New York*, No. 96-CV-4914 (SAS), 1999 WL 959375, at *3 (S.D.N.Y. Oct. 20, 1999).

Second, PowX was provided with sufficient notice that it could not proceed in this action without counsel, and thus was on notice that its delay in obtaining new counsel would result in dismissal. On May 8, 2025, the Court stated that "PowX is on a rapid collision course towards a dismissal of its claims for failure to prosecute, combined with a default judgment on the counterclaims." Dkt. No. 115 at 7:9–11. Additionally, on June 26, 2025, the Court again advised that corporate entities "cannot proceed in this Court without counsel." Dkt. No. 150. Accordingly, PowX was provided sufficient notice that its claims would be dismissed if it did not obtain counsel and prosecute this action. Third, there is a high likelihood that Performance Solutions will be prejudiced by further delay. In this district, "[w]here a plaintiff has become inaccessible for months at a time, courts presume prejudice." *Caussade v. United States*, 293 F.R.D. 625, 630 (S.D.N.Y. 2013). Here, PowX has not been accessible since March and Performance Solutions cannot prosecute certain of its claims until its claims against PowX have been adjudicated. *See* Dkt. No. 159. The continuation of these delays will clearly prejudice Performance Solutions.

Fourth, the balance between the need to alleviate court calendar congestion and the plaintiff's right to an opportunity to be heard weighs in favor of dismissal. "Courts in this

11

district have held that calendar congestion outweighed a plaintiff's opportunity to be heard when the plaintiff has rebuffed opportunities to be heard." *Rubin v. Abbott Lab'ys*, 319 F.R.D. 118, 121 (S.D.N.Y. 2016). PowX rebuffed its opportunity to be heard when it failed to appear at the May 8, 2025 conference and failed to obtain counsel after multiple extensions of the time to do so. Furthermore, as set forth above, PowX failed to comply with multiple court orders. "Noncompliance with court orders undermines the ability of the Court to manage its docket and dispense justice to all litigants in an expeditious manner." *Mahoney v. City of New York*, No. 12-CV-6717 (PKC) (KNF), 2013 WL 5493009, at *2 (S.D.N.Y. Oct. 1, 2013). Accordingly, the fourth factor weighs in favor of dismissal.

Fifth, given PowX's repeated failures to comply with court orders, no lesser sanction is likely to be effective. *See Capellan v. Dep't of Homeland Sec.*, No. 06-CV-2551 (KMW), 2008 WL 2512491, at *5 (S.D.N.Y. June 13, 2008) ("Upon reviewing the entire record of this case, the Court concludes that because Plaintiffs have a track record of disregarding deadlines and orders, lesser sanctions are unlikely to be effective."). Thus, all five factors weigh in favor of dismissal of PowX's claims against Performance Solutions with prejudice. *See Ventoso v. Shihara*, No. 19-CV-03589 (PAE), 2022 WL 19706, at *3 (S.D.N.Y. Jan. 3, 2022) ("Federal Rule of Civil Procedure 41(b) is a discretionary measure that allows courts to dismiss a case with prejudice where the plaintiff fails to prosecute or to comply with the Federal Rules of Civil Procedure or a court order").

## III. DEFAULT JUDGMENT IS WARRANTED AGAINST POWX AND THE CORPORATE COUNTER-DEFENDANTS

### A. Legal Standard for Default Judgment

In addition to dismissal of PowX's claims for failure to prosecute, Performance Solutions seeks a default judgment against PowX and the Corporate Counter-Defendants on its

12

supplemental counterclaims. "Federal Rule of Civil Procedure 55 establishes a two-step process for a plaintiff to obtain a default judgment." *Lewis v. Legal Servicing, LLC*, No. 19-CV-08085 (PAE), 2021 WL 3500867, at *2 (S.D.N.Y. Aug. 9, 2021). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, unless a party's claim is for a sum certain, "the [moving] party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "In determining whether to grant a motion for default judgment, a court within this district considers three factors: (1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Nespresso USA, Inc. v. Afr. Am. Coffee Trading Co. LLC*, No. 15-CV-05553 (LTS), 2016 WL 3162118, at *2 (S.D.N.Y. June 2, 2016). "Once the court finds that these factors favor the [moving party], it must determine whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action." *Id.*

### B. PowX and the Corporate Counter-Defendants Are in Default

Performance Solutions has satisfied the requirements of Federal Rule of Civil Procedure 55(a) & (b) as to PowX and the Corporate-Counter Defendants. First, the Clerk entered a Certificate of Default as to PowX and each of the Corporate Counter-Defendants as required by Rule 55(a). Dkt. Nos. 191-195. Second, Performance Solutions applied for default judgment as required by Rule 55(b)(1). Dkt. No. 196. Because the procedural requirements of Rule 55 are met, the Court next considers whether the relevant factors weigh in favor of granting a default judgment. Here, each of the relevant factors weighs in favor of granting a default judgment.

The first factor—whether the default was willful—weighs in favor of granting a default. In this Circuit, "willfulness, in the context of a default" refers "to conduct that is more than merely negligent or careless, but is instead egregious and not satisfactorily explained." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015).  PowX and the Corporate Counter-Defendants acted egregiously in failing to respond to Performance Solutions' supplemental counterclaims and provided no explanation as to their non-responsiveness.  Performance Solutions submitted sufficient evidence to establish that PowX and the Corporate Counter-Defendants were aware of Performance Solutions' supplemental counterclaims but did not respond.  Specifically, on May 30, 2025, Mr. Laufer accepted service on behalf of PowX and each of the Corporate Counter-Defendants as their authorized agent.  *See* Dkt. Nos. 141–143 & 145.  Mr. Laufer was also served individually on the same day, at the same time, and at the same address.  Dkt. No. 144.  In response to such service, Mr. Laufer requested an extension of time to answer the supplemental counterclaims, which the Court granted and extended to all Corporate Counter-Defendants.  Dkt. Nos. 150 & 156.  Mr. Laufer subsequently responded to the counterclaims, but neither PowX nor the Corporate Counter-Defendants responded.  *See* Dkt. No. 161.

Based on this series of events, there can be no dispute that PowX and the Corporate Counter-Defendants were served with the supplemental counterclaims but chose not to respond. Furthermore, neither PowX nor the Corporate Counter-Defendants responded to Performance Solutions' default judgment motion.[3]  Their default is clearly willful.  *See Glob. Exp. Mktg. Co. v. Abdelrahman A. Abbar Trading Co.*, No. 20-CV-03504 (JPC) (SN), 2023 WL 425042, at *2 (S.D.N.Y. Jan. 9, 2023), *report and recommendation adopted*, No. 20-CV-03504 (JPC) (SN),

---

[3] Mr. Laufer also did not respond to the default judgment motion.

14

2023 WL 2632230 (S.D.N.Y. Mar. 24, 2023) ("A defendant's default is willful if the defendant was properly served yet failed to appear, answer, or otherwise respond to the complaint."). The second factor—whether the Defendant has meritorious defenses—also weighs in favor of default judgment because the Corporate Counter-Defendants (and PowX, as to the supplemental counterclaims) have not alleged any defenses in this action.[4] Where, as here, a party has not answered or otherwise responded to the claims against it, the Court is unable to evaluate any possible meritorious defense. *See id.* at *3.

The third and final factor also weighs in favor of granting a default judgment because Performance Solutions would be prejudiced absent the entry of a default. Absent a default, Performance Solutions "will have no alternative legal redress to pursue damages or recover costs." *Bethel v. Royal Leaf NY LLC*, No. 24-CV-9073 (DLC) (KHP), 2025 WL 3216640, at *4 (S.D.N.Y. Oct. 9, 2025), *report and recommendation adopted Bethel v. Royal Leaf NY LLC*, No. 24-CV-9073 (DLC), 2025 WL 3216413 (S.D.N.Y. Nov. 18, 2025); *see also Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-06865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) ("[D]enying the motion would be unfairly prejudicial to Plaintiff, because [defendants] have failed to appear, defend, or plead in response to any of the substantive allegations in Plaintiff's Complaint.").

### C. Liability

"A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment. Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the

---

[4] To the extent PowX responded to the original counterclaims, it has not shown it has meritorious defenses. *See* Dkt. No. 33 at 14.

complaint are taken as true." *Bricklayers*, 779 F.3d at 187. Performance Solutions seeks to establish liability for three claims against PowX. First, it seeks judgment against PowX for infringing on five of Performance Solutions' patents. Second, it seeks judgment against PowX for malicious prosecution. Third, it seeks judgment against PowX for violating N.Y. Debt. & Cred. Law § 273. Dkt. No. 196 at 2. Performance Solutions seeks to hold Mr. Laufer and the Corporate Counter-Defendants liable for these claims by piercing the corporate veil. *Id.* at 7.

### 1.    PowX is Liable for Patent Infringement

Performance Solutions has sufficiently established PowX's liability for patent infringement as a matter of law. Performance Solutions brings claims for patent infringement pursuant to the Patent Act. Under the Patent Act, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271. There are "five elements of a patent infringement pleading, namely to (i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked." *BTL Indus., Inc. v. Versalini Beuaty & Spa Salon*, No. 23-CV-8617 (LJL), 2024 WL 3342293, at *3 (S.D.N.Y. July 8, 2024).

Performance Solutions brings patent infringement claims for five different patents—the U.S. Patent Nos. 9,345,921 ("'921 Patent"); 9,539,167 ("'167 Patent"); 9,656,112 ("'112 Patent"); 10,278,890 ("'890 Patent"); and 10,695,260 ("'260 Patent")—and satisfies each of the five elements required to establish liability for each patent. Dkt. No. 113 ¶ 13. First, Performance Solutions alleges ownership of each patent. *Id.* Second, Performance Solutions identifies PowX as the Defendant infringing on the patents. *Id.* at 26–28. Third, Performance Solutions cites the patents that are being infringed. *Id.* Fourth, Performance Solutions identifies

16

the means through which PowX infringes on its patents (selling infringing products on Amazon). *Id.* ¶¶ 21–22. Fifth, Performance Solutions alleges that PowX violated Section 271 of the Patent Law. *Id.* at 37. Because all five elements are satisfied, Performance Solutions is entitled to default judgment against PowX on its patent infringement claims.

### 2. PowX is Liable for Violations of the N.Y. Debt. & Cred. Law § 273.

Performance Solutions alleges that PowX conducted multiple fraudulent conveyances by fraudulently transferring its retail and cash assets in violation of N.Y. Debt. & Cred. Law ("DCL") § 273. N.Y. Debt. & Cred. Law § 273 renders void "[a] transfer made or obligation incurred by a debtor . . . if the debtor made the transfer or incurred the obligation":

> (1)  with actual intent to hinder, delay or defraud any creditor of the debtor; or
>
> (2)  without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (i)      was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (ii)     intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

DCL § 273. A transfer made "with actual intent to defraud" any creditor is an "actual fraudulent conveyance" whereas a transfer made "without receiving a reasonably equivalent value" in exchange for the transfer is a "constructive fraudulent conveyance." *Anhui Aido Garment Co., Ltd. v. Stern*, No. 24-CV-1572 (JGK), 2025 WL 1663860, at *6–8 (S.D.N.Y. June 12, 2025).

Performance Solutions alleges that PowX made both constructive and actual fraudulent conveyances. The basis for Performance Solutions' constructive fraudulent conveyance claim is that PowX sold or liquidated its inventory without receiving a reasonably equivalent value in exchange. *See* Dkt. No. 113 ¶¶ 154–57. Performance Solutions alleges that PowX had three

categories of inventory: "Warehouse Inventory," "Imported Inventory," and "Amazon Inventory," each of which was sold without receiving a reasonably equivalent value. The record in this case supports Performance Solutions' allegation. Mr. Laufer testified that he sold the Warehouse Inventory at a price of 60 cents per unit, while the actual retail value of the inventory was approximately $38 per unit. Based on the number of units sold, the retail value of the product was $1,198,976.00 in total, but was sold for $18,931, or approximately 1.58% of the inventory's retail value. *Id.* ¶ 155. Similarly, the Imported Inventory had a retail value of $360,240 but was sold for $11,000, or approximately 3% of its retail value. *Id.* ¶ 156. Finally, the Amazon Inventory had a retail value of $222,034, but according to Mr. Laufer's testimony, he paid Amazon $25,000 to dispose of it. *Id.* ¶ 157. These allegations clearly establish that PowX transferred its inventory "without receiving a reasonably equivalent value in exchange for the transfer." DCL § 273(a)(2).

Performance Solutions also established that PowX believed or reasonably should have believed that it would incur debts "beyond [its] ability to pay." *Id.* § 273(a)(2)(ii). On June 14, 2024, the Court issued a preliminary injunction in which it found that Performance Solutions was likely to succeed on the merits of its claims. Dkt. No. 33 at 32. Performance Solutions sought money damages in connection with those claims. *See* Dkt. No. 14 at 15. Thus, after June 14, 2024, PowX reasonably should have believed that it would be liable to Performance Solutions for some significant amount of money damages. PowX began liquidating its inventory approximately one month after the issuance of the Preliminary Injunction Order, and the liquidation of its inventory rendered it insolvent. Dkt. No. 114 ¶¶ 167–168. Because PowX was insolvent, it had no ability to pay potential money damages to Performance Solutions. Thus, PowX "reasonably should have believed" that it would "incur, debts beyond [its] ability to pay as

they became due" in this litigation.  DCL § 273(a)(2)(ii).  These allegations sufficiently establish

that PowX conducted a constructive fraudulent conveyance in violation of DCL § 273(a)(2).[5]

Performance Solutions also alleges that PowX fraudulently transferred cash assets from

PowX to Mr. Laufer after Performance Solutions asserted counterclaims and sought a

preliminary injunction against it.  These allegations do not sufficiently establish an actual

fraudulent conveyance because they do not show an "actual intent to . . . defraud."  DCL

§ 273(a)(1).  The documentation submitted by Performance Solutions indicates that the transfers

from PowX to Mr. Laufer began years before this litigation was initiated.  *See* Dkt. No. 113-11 at

86.  Thus, there is not sufficient evidence that the continuation of these transfers after this lawsuit

was initiated necessarily reflected an attempt to defraud Performance Solutions.

However, the allegations do establish a constructive fraudulent conveyance for transfers

from PowX's account to Mr. Laufer's account made after the issuance of the Preliminary

Injunction Order.  PowX transferred these assets without receiving a "reasonably equivalent" or

any value in return.  DCL § 273(a)(2).  Dkt. No. 198 at 113.  As discussed above, PowX

reasonably should have believed that it would incur debts after the issuance of the Preliminary

Injunction.  Thus, Performance Solutions successfully alleges a claim for constructive fraudulent

conveyance for cash transfers made from PowX to Mr. Laufer's personal account after the

issuance of the Preliminary Injunction Order.

### 3.    PowX is Liable for Malicious Prosecution

Performance Solutions alleges that PowX engaged in malicious prosecution by initiating

this action.  "The elements of a malicious prosecution claim under New York law are (1) that the

---

[5] Performance Solutions also alleges that these transfers were actual constructive transfers.  The Court need not decide this issue because, as either constructive or actual fraudulent conveyances, the transfers are void as to Performance Solutions.

defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000). Performance Solutions successfully alleges each of these elements. PowX initiated this action against Performance Solutions. The basis for its claims was that its product did not feature a core. Dkt. No. 114 ¶ 110. However, the product clearly featured a plastic core that was visible on sight. *Id.* Furthermore, PowX was apparently aware that it infringed on Performance Solutions' patent because, days before it initiated this action, Mr. Laufer emailed Performance Solutions on behalf of PowX stating that he was "keen to … explore a possible royalty or licensing agreement." Dkt. No. 16-1 ¶ 24. Because PowX knew it was infringing on at least one of Performance Solutions' patents, it lacked probable cause to believe that its claims that it was not infringing on any patent could succeed.

Performance Solutions also successfully alleges that PowX acted with malice in initiating this case. Performance Solutions claims that PowX filed the complaint for the sole purpose of taking advantage of an Amazon policy that would allow it to continue selling an infringing product as long as PowX and Performance Solutions were engaged in litigation, absent a court order. Dkt. No. 114 ¶ 110. Furthermore, Mr. Laufer himself admitted "instead of seeking a licensing agreement, I engaged a lawyer to contest the issue," which he acknowledged "was a misguided approach and an outright mistake, as [Performance Solutions] are the rightful patent holders." Dkt. No. 196-17 at 2. Where, as here, the moving party has shown that a case was brought with improper motives, that is sufficient to establish malice. *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010).

Finally, the case was terminated in Performance Solutions' favor. As discussed above, PowX's claims against Performance Solutions are dismissed for PowX's failure to prosecute.[6] "The body of New York State caselaw, like the decisions of other states, holds that dismissals for lack of timely prosecution should generally be considered, for purposes of a claim of malicious prosecution, a termination favorable to the accused." *Murphy v. Lynn*, 118 F.3d 938, 950 (2d Cir. 1997). Accordingly, default judgment is granted in Performance Solutions' favor on its malicious prosecution claim against PowX.

### D. Veil Piercing is Warranted

Performance Solutions seeks to hold Mr. Laufer and the Corporate Counter-Defendants liable for harm caused by PowX under a veil piercing theory. A court may pierce the corporate veil "when the corporation has been so dominated by an individual or another corporation and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego." *Miramax Film Corp. v. Abraham*, No. 01-CV-5202 (GBD), 2003 WL 22832384, at *7 (S.D.N.Y. Nov. 25, 2003). When a court pierces the corporate veil, it "impose[s] the corporate obligation on its owners." *In re Nordlicht*, 115 F.4th 90, 110 (2d Cir. 2024). A party can also bring reverse veil-piercing claims that seek to hold a "*corporation liable* for the debts of its owners." *Id.* at 107. The elements required to pierce the corporate veil and to pierce the corporate veil in reverse are the same. Under either theory, "[a] plaintiff must show that (1) the owner exercised complete domination over the corporate entity with respect to the transactions at issue; and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Id.*

---

[6] In addition, the Court has already found that Performance Solutions was likely to succeed on the merits of its patent infringement claims, following the preliminary injunction hearing, which necessarily means that PowX was *not* likely to succeed on either its invalidity or non-infringement claims.

Performance Solutions brings both standard and reverse-veil piercing claims. It seeks to hold Mr. Laufer, PowX's owner, liable for PowX's debts and seeks to hold several shell companies owned by Mr. Laufer liable as well through a reverse-veil piercing theory. Performance Solutions' veil piercing claims are successful against Mr. Laufer. First, there is no question that Mr. Laufer exercised complete domination over PowX. To determine whether an individual exercised complete domination over a corporation, courts look to the following factors:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.,* issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991). "No one factor is dispositive, and courts have considered additional factors as well." *Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC*, 851 F.Supp.2d 504, 510 (S.D.N.Y. 2012).

Performance Solutions' allegations overwhelmingly establish that the majority of these factors are met as to PowX. Mr. Laufer maintained no records of PowX's revenue or expenses; PowX did not have proper accounting and was repeatedly undercapitalized; Mr. Laufer testified that he "treated basically my whole life as basically one big account," Dkt. No. 198 at 89, and made arbitrary payments to his personal account from various corporate accounts; he is the sole owner and employee of PowX; PowX's business address was also Mr. Laufer's home address;

22

and it would not have been possible for PowX to exercise independent business discretion because Mr. Laufer was its only employee and owner.  Dkt. No. 99-1 at 34.

The second factor—the use of corporate domination to commit a fraud or wrong that injured the party seeking to pierce the veil—is also satisfied because Mr. Laufer's domination of PowX was used to render PowX judgment-proof to Performance Solutions' claims.  Mr. Laufer rendered PowX insolvent by liquidating its inventory and transferring its funds to his personal account and to a series of shell businesses that served no purpose other than as repositories for funds controlled by Mr. Laufer.  Dkt. No. 113-11 at 8.  In so doing, Mr. Laufer rendered PowX judgment-proof to Performance Solutions' claims against it.  Dkt. No. 114-11 at 49.  "The stripping of corporate assets by shareholders to render the corporation judgment proof constitutes a fraud or wrong justifying piercing the corporate veil."  *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, 714 F. Supp. 3d 416, 444 (S.D.N.Y. 2024), *aff'd*, No. 24-423-CV, 2025 WL 289499 (2d Cir. Jan. 24, 2025).  Accordingly, the second factor is satisfied and veil piercing is appropriate as to Mr. Laufer.  However, for the reasons set forth above, the claims against Mr. Laufer are stayed because of the ongoing bankruptcy action.

On the other hand, reverse veil piercing is not warranted as to the other Corporate Counter-Defendants because Performance Solutions has not sufficiently alleged that Mr. Laufer's domination of them was used to commit fraud or wrong that harmed Performance Solutions.  Much like PowX, the Corporate Counter-Defendants appear to have been entirely dominated by Laufer, sharing the same owner and the same business address.  Dkt. No. 198 at 63.  Additionally, Mr. Laufer specifically testified that Il Deals, the Laufer Group and Albion Group did "nothing" and conducted no business.  However, Performance Solutions does not specifically allege that Mr. Laufer's domination of these businesses was used to commit a fraud

23

or wrong. Performance Solutions does allege that cash assets were transferred out of PowX's accounts and into the accounts of certain of the Corporate Counter-Defendants. But these transfers went both ways, with the shell companies also transferring cash back into PowX's account. Dkt. No. 198 at 90 & 92. Thus, unlike the transfers to Mr. Laufer's personal accounts, there is not a sufficient basis to conclude that the transfers were used to commit a fraud or wrong such as to render PowX judgment-proof.[7]

## IV.    PERFORMANCE SOLUTIONS IS ENTITLED TO DAMAGES

Performance Solutions seeks (i) an award of treble damages in the amount of $1,765,788 for PowX's patent infringement violations; (ii) $650,992 in legal fees; and (iii) $280,050 in costs. Performance Solutions also seeks to permanently enjoin PowX and the Corporate Counter-Defendants from selling the enjoined product. For the reasons set forth below, Performance Solutions is awarded damages for its patent infringement claims as well as reasonable attorneys' fees.

### A. Legal Standard for Awarding Damages on Default Judgment

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Am. Jewish Comm. v. Berman*, No. 15-cv-5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)), *report and recommendation adopted*, No. 15-cv-5983 (LAK), 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). "A plaintiff bears the burden of establishing [its]

---

[7] Importantly, this does not mean that, should Performance Solutions ever be able to collect on a judgment against Mr. Laufer, that it could not seek to enforce that judgment against funds held under the nominal ownership of the Corporate Counter-Defendants. But that issue remains for another day.

entitlement to recovery and thus must substantiate its claim with evidence to prove the extent of damages." *Burns v. Scott*, 635 F. Supp. 3d 258, 272 (S.D.N.Y. 2022). "An inquest into damages may be conducted on the papers, without an evidentiary hearing, where there is a sufficient basis on which to make a calculation." *M&J Mech. Corp. v. Caldwell & Walsh Bldg. Constr., Inc.*, 790 F. Supp. 3d 334, 341 (S.D.N.Y. 2025).

### B. Reasonable Royalty Damages

Performance Solutions seeks damages for its patent infringement claims. "Upon a showing of infringement, a patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.'" *ResQNet.com, Inc. v. Lansa, Inc.*, 828 F. Supp. 2d 688, 692 (S.D.N.Y. 2011) (quoting 35 U.S.C. § 284). "The infringed party bears the burden of proof to persuade the court with legally sufficient evidence regarding an appropriate reasonable royalty." *Id.* "[T]he classic way to determine the reasonable royalty amount is to multiply the royalty base, which represents the revenue generated by the infringement, by the royalty rate, which represents the percentage of revenue owed to the patentee." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 27 (Fed. Cir. 2012). To calculate a reasonable royalty rate, "courts rely on the comprehensive, if overlapping, list of fifteen factors detailed in *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970), often termed the '*Georgia–Pacific* factors.'" *ResQNet.com*, 828 F. Supp. 2d at 692 (S.D.N.Y. 2011).

Here, Performance Solutions provided expert testimony that relied primarily on the first *Georgia-Pacific* factor—the past and present royalties received by the patentee for the licensing of the patent in suit—to establish a reasonable royalty rate. Specifically, Performance Solutions'

25

expert found that effective royalty rates agreed to by other licensees for use of the Asserted Patents within the relevant time frame ranged from 11.0% to 25.0%, with an average rate of 21%. Dkt. No. 198 ¶ 11. Based on Performance Solutions' historical royalty rate during the relevant time period, the Court finds that 21% is a reasonable royalty rate for the patents at issue.

Reasonable royalty damages are calculated by multiplying the 21% reasonable royalty rate by the royalty base. *Whitserve*, 694 F.3d at 27. The royalty base reflects "the revenue pool implicated by the infringement." *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 286 (N.D.N.Y. 2009), *amended on other grounds*, No. 01-CV-1974, 2009 WL 1405208 (N.D.N.Y. May 15, 2009). Performance Solutions' expert, Justin Lewis, calculated the royalty base for two different groups of Accused Products: those PowX sold before the Court issued a preliminary injunction against PowX and those sold after. Dkt. No. 198 ¶ 14. For the pre-injunction sales, Mr. Lewis used PowX's reported revenues to calculate an average selling price of $21.68 per unit. Mr. Lewis then multiplied that figure by the number of units sold (50,307) for a royalty base of $1.09 million.[8] *Id.* ¶ 16. For the post-injunction sales, Mr. Lewis calculated two figures: $32,455 and $725,982. *Id.* ¶ 23. The lower figure reflects sales for units sold at a price of $0.60/unit, which Mr. Laufer testified was the price at which he sold the inventory. Dkt. No. 196 at 11 n.7. The larger figure reflects sales at the $21.68 per unit price. The Court has already determined that sales of the inventory for $.60/unit were constructive fraudulent conveyances. Accordingly, the Court will credit the figure of $725,982 when determining

---

[8] Mr. Lewis also applied the average minimum advertising price agreed to by other Performance Solutions' licensees. Because the Court does not have sufficient information to ascertain whether PowX would have agreed to the minimum advertising price or whether that price accurately reflects the revenue pool implicated by the infringement, the Court will use the royalty base determined by PowX's actual revenue.

damages.  Multiplying the royalty rate of 21% by the royalty base of $1,816,534 results in reasonable royalty damages of $381,472.14.

### C. Treble Damages are Warranted

35 U.S.C. Section 284 authorizes a court to "increase the damages up to three times the amount found or assessed."  Such an increase is warranted "where a district court finds, in its discretion, the case before it to be an egregious case of misconduct beyond typical infringement." *Signify N. Am. Corp. v. Axis Lighting Inc.*, No. 19-CV-05516 (DLC), 2020 WL 2079844, at *1 (S.D.N.Y. Apr. 30, 2020).  "Knowledge of the patent alleged to be willfully infringed is a prerequisite to enhanced damages." *Id.*  The record before the Court demonstrates that PowX willfully and knowingly infringed on Performance Solutions' patents such that treble damages are warranted.  First, in 2023 PowX represented to Amazon that it should be allowed to continue its sale of the Accused Product based on the premise that the Product does not contain a core and thus could not infringe on Performance Solutions' patent.  Dkt. No. 196 at 12.  That premise has been repeatedly shown to be false. *Id.*

Second, PowX declared in Court filings that its products did not infringe on Performance Solutions' patents while simultaneously seeking a licensing agreement with Performance Solutions.  On February 21, 2024, Mr. Laufer emailed Performance Solutions on behalf of PowX stating that he was "keen to … explore a possible royalty or licensing agreement." Dkt. No. 16-1 ¶ 24.  Two days later, PowX filed this lawsuit in which it claimed that "has not infringed and does not infringe any valid claim of the '112 Patent directly or indirectly, either literally or under the doctrine of equivalent." Dkt. No. 3 ¶ 34.  Moreover, it appears the lawsuit was motivated primarily by a desire to circumvent the Amazon internal patent-enforcement process, so that PowX could continue selling infringing products while this lawsuit wended its way through the

courts, or, at a minimum, as leverage to extract a favorable settlement despite knowing its questionable merit.

Third, on February 24, 2024, the day after this case was filed, Performance Solutions emailed PowX a decision of the USPTO Patent Trial and Appeal Board upholding the validity of the patents at issue. Dkt. No. 16-1 at 26. PowX continued to prosecute this action even after receiving the decision.[9] Finally, on June 17, 2024, Mr. Laufer emailed Performance Solutions stating that he took a "misguided approach and an outright mistake, as you [Performance Solutions] are the rightful patent holders." Dkt. No. 196-17 at 2. Even after Mr. Laufer sent that email, PowX did not drop its claims against Performance Solutions and indeed Mr. Laufer went on to violate the Preliminary Injunction Order and continue infringing on Performance Solutions' patent by liquidating PowX's inventory and sending those infringing products into the marketplace. Together, these circumstances overwhelmingly suggest that PowX both knowingly infringed on Performance Solutions' patent and prosecuted an action against it for patent infringement despite knowing that PowX was actually infringing on Performance Solutions' patents. These actions reflect "an egregious case of misconduct beyond typical infringement" that warrants treble damages. *Signify N. Am. Corp.*, 2020 WL 2079844, at *1. Performance Solutions is therefore entitled to $1,144,416.42 in damages.

### D. Attorney's Fees are Warranted Pursuant to 35 U.S.C. § 285

The Patent Act permits an award of "reasonable attorney fees to the prevailing party" in "exceptional cases." 35 U.S.C. § 285.[10] The Supreme Court has defined an "exceptional case"

---

[9] The Court recognizes that parties have a right to challenge decisions of the USPTO in court, and that the USPTO is thus not the final word. This is but one factor among many, in a case replete with evidence of PowX's bad faith.

[10] Performance Solutions is the prevailing party for purposes of the fee-shifting statute because it is obtaining some of the relief it seeks in this litigation. "In determining whether a party is a prevailing party in patent litigation, we apply the general principle that 'to be a prevailing party, one must receive at

in this context as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Such a determination must be made on a "case-by-case" basis "considering the totality of the circumstances." *Id.* "In this case-by-case exercise, district courts may consider: frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *AML IP, LLC v. Aero Glob., LLC*, No. 23-CV-11264 (DEH), 2025 WL 2673691, at *6–7 (S.D.N.Y. Sept. 18, 2025).

Performance Solutions has sufficiently shown that this case is the type of "exceptional case" for which attorneys' fees are warranted. As set forth above, the record suggests that PowX prosecuted this action with knowledge that its claims were baseless; PowX engaged in conversations with Performance Solutions about obtaining a licensing agreement while simultaneously asserting in Court filings that it did not infringe on Performance Solutions' patent; and PowX violated a court order and continued to push infringing products into the marketplace after being enjoined and acknowledging to Performance Solutions that it was the rightful patent holder. These actions alone indicate the "frivolousness" and "objective unreasonableness" of PowX's claims. *Id.* at *6. Accordingly, this case is an exceptional case that warrants attorneys' fees under the Patent Act.

---

least some relief on the merits, which alters the legal relationship of the parties." *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1304 (Fed. Cir. 2018). Here, Performance Solutions has obtained the dismissal of the claims against it and a default judgment in its favor. This relief "alters the legal relationship between the parties" and is consistent with the relief it requested on the merits. *Id.*

Courts in this Circuit have calculated attorneys' fees through the lodestar method. *TouchTunes Music Corp. v. Rowe Int'l Corp.*, No. 07-CV-11450, 2014 WL 12798024, at *3 (S.D.N.Y. Apr. 3, 2014). That lodestar method involves "multiplying a reasonable number of hours expended on the litigation by a reasonable hourly rate for attorneys and paralegals." *Id.* To determine a reasonable hourly rate, courts in this district apply a "forum rule" which "generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Bergerson v. New York State Off. of Mental Health, Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011). "In this District and in cases with a similar level of complexity, courts have found hourly rates of, at the very most, up to $1,400 to be reasonable for partners at large law firms in New York City." *Al Thani v. Hanke*, No. 20-CV-04765 (JPC), 2025 WL 1591379, at *5 (S.D.N.Y. June 5, 2025). For associates, "courts in this district have found hourly rates of $753 on the upper limit of rates awarded for associates in this district." *Id.* Performance Solutions' counsel litigated this matter at a significantly discounted rate that falls well within the rates deemed appropriate in this district. It charged $350 per hour for partners, $300 per hour for associates, and $150 for paralegals for worked performed in this matter. Dkt. No. 196-3 ¶ 21; Dkt. No. 196-4 at 2. Such a rate is reasonable under the lodestar method.

To determine the reasonable number of hours expended, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *JC Hosp. v. Hochberg*, No. 23-CV-2051 (LJL), 2025 WL 3124313, at *23 (S.D.N.Y. Nov. 7, 2025). "In determining how much attorney time should be compensated, the court initially looks to the amount of time spent on each category of tasks, as reflected in contemporaneous time records." *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 29 (S.D.N.Y.

2015).  After reviewing the billing records, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Id.*

Performance Solutions submitted contemporaneous billing records detailing the work performed in this litigation.  *See* Dkt. No. 196-4.  After conducting a review of each item billed and the time expended, the Court finds that each expenditure was reasonable and similar to what a "reasonable attorney would have expended . . . in pursuit of the case." *Gonzalez*, 112 F. Supp. 3d at 29.  Multiplying Performance Solutions' counsel's rates by the hours expended results in an award of $650,992 in attorneys' fees.  Dkt. No. 196-3 at 7.

Under Section 285 "costs incurred are recoverable along with attorneys' fees." Performance Solutions seeks to recover $280,050.66 in costs for expert fees, travel costs, and other relevant costs.  "Courts in this district assess the reasonableness of expert fees using the same method they do for attorneys' fees-by first multiplying the reasonable hourly rate by the reasonable number of hours expended." *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-CV-7830 (RJS), 2012 WL 5177491, at *5 (S.D.N.Y. Oct. 19, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013). The Court does not have sufficient information to assess the reasonableness of Performance Solutions' expert fees and to award costs at this time.  Although Performance Solutions has submitted the amount billed by experts, it has not provided the expert invoices that would allow the Court to make an assessment as to the reasonableness of expert fees (including factors such as hourly rates and time expended).  Performance Solutions is directed to submit billing invoices or other suitable records for its experts so that the Court can make this determination.

### E.    A Permanent Injunction is Not Warranted

Performance Solutions requests that the Court permanently enjoin PowX and the Corporate Counter-Defendants from selling the Accused Product or taking other similar actions.

31

"A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Virgin Enters. Ltd. v. Enom, Inc.*, No. 08-CV-0328 (JGK) (THK), 2008 WL 4054418, at *2 (S.D.N.Y. Aug. 18, 2008). The Patent Act authorizes courts to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. To obtain a permanent injunction, the moving party must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010).

The Court cannot issue a permanent injunction at this time because Performance Solutions has not met the second factor: it has not shown that monetary damages are inadequate to compensate it for its injury. Performance Solutions argues that "PowX selling the enjoined product at a drastically reduced price" caused "price erosion in the market" and "resulted in lost business opportunities to Performance Solutions." Dkt. No. 196 at 17. However, Performance Solutions does not represent that PowX continues to sell the Enjoined Product or any similar product. Furthermore, Performance Solutions claims that PowX has liquidated all of its inventory. If PowX has no inventory and is not selling the Enjoined Product, then the damages Performance Solutions alleges based on price erosion and lost business opportunities are based on PowX's past conduct. The Court has already awarded Performance Solutions monetary damages for that conduct in the form of a reasonable royalty award. Without any allegations of

actions that PowX is currently undertaking that would cause Performance Solutions a non-compensable injury, the Court lacks sufficient grounds for the issuance of a permanent injunction.

### F.    PowX's Confidential Information Remains Under Seal

Finally, Performance Solutions has moved to seal certain of its filings that contain PowX's confidential business information. Specifically, Performance Solutions moves to seal its supplemental counterclaims (Dkt. No. 113), the declaration of Mr. Lewis in support of Performance Solutions' motion for default judgment (Dkt. No. 198), and a letter containing PowX's tax returns (Dkt. No. 208). Performance Solutions' motions to seal are GRANTED.

"The right of public access to judicial documents is protected both by a common law right of public access and by the First Amendment to the United States Constitution." *Ferrand v. Lyonnais*, 106 F. Supp. 3d 452, 454 (S.D.N.Y. 2015). This right, however, is "not absolute." *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019). To determine whether the common law presumption of access attaches to a particular document, courts conduct a three-step analysis. *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). The first step in the analysis is to determine whether the document at issue is a judicial document to which the presumption of access attaches. *Id.* Next, the Court assesses "the weight of the presumption of access to that document," which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* Finally, "the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Id.*

Performance Solutions' supplemental counterclaims, declaration in support of its default judgment motion, and November 12, 2025 letter are judicial documents because they reflect

pleadings and documents that seek to invoke the Court's adjudicative powers. *See Bronx Conservatory of Music, Inc. v. Kwoka*, No. 21-CV-01732 (AT) (BCM), 2021 WL 2850632, at *2 (S.D.N.Y. July 8, 2021) ("The parties' pleadings, including answers and counterclaims, are unquestionably judicial documents"); *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02-CV-04483 (RCC) (MHD), 2006 WL 3016311, at *2 (S.D.N.Y. Oct. 23, 2006) ("documents that seek to invoke the adjudicative powers of the court-are judicial documents and are thus presumptively to be filed publicly"). However, Performance Solutions has proposed redacting the documents in a way that are narrowly tailored to protect only PowX's confidential business information. *See Samsung Elecs. Co. v. Microchip Tech. Inc.*, 748 F. Supp. 3d 257, 261 (S.D.N.Y. 2024) ("[T]he Court finds that the proposed sealing requests are narrowly tailored to prevent unauthorized dissemination of confidential business information, as well as proprietary technical and trade secret information, the protection of which outweighs the public's right of access."). Accordingly, Performance Solutions' motions to seal are granted.

## CONCLUSION

1. PowX's claims against Performance Solutions are DISMISSED pursuant to Federal Rule of Civil Procedure 41(b).

2. Default Judgment is entered against PowX, The Laufer Group Inc., Albion Place Inc., Il Deals Inc, and QTest Inc.

3. Performance Solutions is awarded $1,144,416.42 in damages and $650,992.00 in attorneys' fees.

4. If Performance Solutions continues to seek reimbursement for costs incurred in this litigation, it should submit further documentation of those costs, including expert billing invoices, by no later than **30 days** from the date of this Order.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 99, 103, 112, 164, 196–97, and 207.

Dated: March 3, 2026
New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge

35